### CARROL ET AL. *v.* GREEN ET AL.

The Exchange Bank of Columbia, S. C., failed in February, 1865. In June, 1872, its creditors filed a bill in equity to enforce their claims against the stockholders under a clause of the charter, which, "upon the failure of the bank," rendered them individually liable for any sum not exceeding double the value of their respective shares. The defence set up the Statute of

Limitations of 1712, which requires actions upon the case, and actions of debt, grounded upon any contract without specialty, to be brought within four years. *Held,* that as the liability of the stockholders arose from their acceptance of the act creating the corporation, and their implied promises to fulfil its requirements, the proper remedy was an action upon the case; and that, as the statute barred such an action at law, it was also a good defence in equity.

APPEAL from the Circuit Court of the United States for the District of South Carolina.

*Mr. James Lowndes* for the appellant.

*Mr. D. T. Corbin, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

A number of important questions arising in this case have been fully argued, which we shall pass by without remark. We have not examined any of them exhaustively, and have not found it necessary to do so. Our judgment will be placed upon the defence of the Statute of Limitations, and our opinion will be confined to that subject.

The appellees filed this bill, and the subpœnas were issued in the court below, on the 18th of June, 1872. The bill seeks to make the appellants individually liable as stockholders of the Exchange Bank of Columbia, which was incorporated by an act of the legislature of South Carolina of the 16th of December, 1852. It is alleged in the bill, that, by this act, the Exchange Bank "was endowed with the same rights and privileges, and was made subject to the same duties, liabilities, obligations, and restrictions, provided for the said Planters' and Mechanics' Bank;" and that, by the fourth section of the act incorporating the last-named bank, it was declared, "that, in case of the failure of said bank, each stockholder, copartnership, or body politic, having a share in such bank at the time of such failure, or who shall have been interested therein at any time within twelve months previous to such failure, shall be liable and held bound, individually, for any sum not exceeding twice the amount of his, her, or their share or shares."

It is conceded for the purposes of this opinion that the provision, quoted from the act of 1852, applies to the stockholders of the Exchange Bank as well as to the bank itself.

The master found, and the court below affirmed the finding

as correct, that the Exchange Bank failed in the month of February, 1865, and never resumed business after that time.

The defendants severally set forth in their answers "that the cause of action stated in the bill did not accrue within four years before the exhibiting of said bill." The complainants replied, and took issue. It appears that the bank suspended specie payment several years before its failure at the time specified by the master; and some stress is laid upon this fact by the counsel for the appellants in discussing the case in this aspect. We have preferred to adopt the finding of the master, because it is the view most favorable to the appellees, and because the proof as to that period brings the case clearly within the terms of the statute; while the proof is further that the bank paid specie until its suspension was legalized, and that, if it had been put in liquidation on the 1st of February, 1865, it could then have met all its liabilities, and redeemed its outstanding bills in specie or its equivalent. Its subsequent losses arose from the war. According to the statute, the liability of "each stockholder" arose upon "the failure of the bank." The liability gave at once the right to sue; and, by necessary consequence, the period of limitation began at the same time. From the last of February, 1865, four years expired on the 1st of March, 1869. But there are certain interruptions of the running of the statute to be taken into account. An act of the legislature of the State, of the 21st December, 1861, suspended the Statute of Limitations until the close of the first session of the next general assembly. This suspension was continued by successive acts. The last one was passed on the 22d of December, 1865, and prolonged the suspension "until the adjournment of the next regular session of the general assembly." The Supreme Court of the State held that these acts arrested the effect of the Statute of Limitations from Dec. 21, 1861, until December, 1866. *Wardlow* v. *Buzzard*, 15 Rich. 158.

It does not appear in the case at what time in December, 1866, the general assembly adjourned. From December, 1866, the statute was in full force. Four years from that time expired in December, 1870. The war in South Carolina ended on the 2d of April, 1866. *The Protector*, 12 Wall. 701.

The Circuit Court of the United States for South Carolina was open for business on and after the 12th of June, 1866.

In any view of the facts that can be taken, more than four years elapsed after the statute began to run before this suit was instituted.

The Statute of Limitations of South Carolina in force when this cause of action accrued, and under which the case must be decided, was that of 1712. Angel on Lim., App. p. 98.

The sixth section declares, among other things, " that . . . all actions of account *and upon the case* (other than such accounts as concern the trade of merchandise), . . . all actions of debt *grounded upon any* lending *or contract without specialty*, all actions for arrearages of rent reserved by indenture, all actions of covenant ᵣ . . . which shall be brought at any time, after the ratification of this act, shall be commenced and sued within the time of limitation hereafter expressed, and not after; that is to say, *the said actions upon the case* other than for slanders, and the said actions for accounts, . . . *and the said actions for . . . debt,* . . . within three years next after the ratification of this act, or within four years next after the cause of such actions or suits, and not after." The statute contains no exception as to actions on the case, save that for slander. All others are expressly barred at the expiration of the time named.

The section of the act of 1852 above quoted, which is said to create the individual liability here in question, is silent as to who shall sue. The suit was, therefore, necessarily to be brought by and for the benefit of the parties injured. 2 Inst. 650; Com. Dig. Debt, A, 1.

Individual liability is repugnant to the law of corporations, and qualifies in this case an exemption which would otherwise exist. Stockholders in such cases are liable according to the plain meaning of the terms employed by the legislature, and not otherwise. The section is silent as to a preference to any class of creditors. All, therefore, in this case, stood upon a footing of equality, and were entitled to share alike in the proceeds of the litigation. The remedy against the stockholders was necessarily in equity. *Pollard* v. *Bailey,* 20 Wall. 521.

They were severally compellable to contribute according to the amount of the stock they respectively held, and the liabili-

ties of the bank to be met, after exhausting its means, the maximum of the liability of each stockholder not to exceed in any event twice the amount of his stock. *Iglehart* v. *The Bank of Circleville & Others*, 6 McLean, 568.

It is obvious from this statement, that, if there had been a suit at law against the stockholders, debt could not have been maintained.

The action of debt lies on a statute where it is brought for a sum certain, or where the sum is capable of being readily reduced to a certainty. It is not sustainable for unliquidated damages. 1 Ch. Pl. 108, 113; *Stockwell* v. *United States*, 13 Wall. 542.

"The action of debt is in legal contemplation for the recovery of a debt *eo nomine* and *in numero*." "Case, now usually called assumpsit," is founded on a contract express or implied. 1 Ch. 99; *Metcalf* v. *Robinson*, 2 McLean, 364.

Let us apply these tests to the case in hand. Certainly the amount sought to be recovered was not certain, and could not readily be reduced to certainty; and there was clearly an implied promise on the part of the stockholders.

The legislature created the corporation, and prescribed certain terms to which the stockholders should be subjected. This was an offer on the part of the State. It could be accepted or declined. There was no constraint. By taking the stock, the terms were acceded to, the contract became complete, and the stockholders were bound accordingly. The same result followed which would have ensued under the like circumstances between individuals. The assent thus given and the promise implied are of the essence of the liability sought to be enforced in this proceeding. If a remedy at law were necessary, clearly it must have been case.

Case is a generic term, which embraces many different species of actions. "There are two, however, of more frequent use than any other form of action whatever: these are assumpsit and trover." Steph. Plead. 18.

"The more legal denomination of the action of assumpsit is trespass on the case upon promises." 3 Woodison's Lect. 168. This form of action originated, like many others, under the Stat. of Westm. 2, 13 Edw. I., c. 24, sect. 2. Its estab-

lishment was strenuously resisted through several reigns. 2 Reeves's Hist., 394, 507, 608. It was sustained, upon full consideration, in *Slade's Case*, 4 Coke, 92, which was decided in 44 Elizabeth. When the statute of South Carolina of 1712, here in question, was enacted, the term *case* was as well understood to embrace assumpsit as any thing else in the law of procedure to which it is now held to apply.

Blackstone thought that one of the most important amendments of the law during the century in which he lived was effected " by extending the equitable writ of *trespass on the case*, according to its primitive institution by King Edward the First, to almost every instance of injustice not remedied by any other process." 4 Com. 442.

But if debt were the proper form of action if this were a suit at law, the result must be the same. The act bars " all actions of debt " grounded upon any lending *or contract without specialty ;* also " after the lapse of four years." The contract here was of the class last designated. The statute was only inducement. The implied promise of the stockholders to fulfil its requirements was the agreement on their part, and it was without specialty.

Where a deed-poll was executed by a lessor, and the lessee entered and enjoyed the premises, it was held that he was liable according to the terms of the lease, but that he was suable only in assumpsit. *Goodwin* v. *Gilbert*, 9 Mass. 484; *Newell* v. *Hill*, 2 Met. 180.

So where one conveys land by deed, pursuant to a parol agreement, the law implies a promise by the grantee to pay the purchase-money, and it may be recovered; but the action must be in case, and not debt on the specialty. *Butler* v. *Lee*, 11 Ala. 885; *Bowen* v. *Bell*, 20 Johns. 338; *Wilkinson* v. *Scott*, 17 Mass. 249.

In *Lindsay* v. *Hyatt*, 4 Ed. Ch. 104, the act of incorporation declared that the directors and stockholders might be sued for the debts of the corporation, either at law or in equity, as if they were joint debtors or copartners. The Vice-Chancellor said, " It appears to me that the six years within which actions on simple contract indebtedness must be brought does apply."

Speaking of a suit at law, he said, " In such an action, the

declaration must be in case founded on the statute. . . . The form of the action and the nature of the liability to be enforced fall within the provisions of the statute which takes away the right to sue after six years."

*Corning* v. *Horner & McCullough*, 1 Comst. 58, was a suit at law against stockholders upon a similar statute, and involving the same statute of limitations. It was said that the action must " necessarily be an action on the case at common law upon the liability of the stockholders for the debt of the company." The same conclusion was reached, as to the time when such actions were barred, as in *Lindsay* v. *Hyatt*.

*Baker* v. *The Atlas Bank*, 9 Met. 182, was a bill in equity founded upon a statute making the stockholders liable in the cases specified. The defendants relied upon a statute of limitations which declared that " all actions founded upon any contract or liability not under seal shall be commenced within six years next after the cause of action shall accrue, and not afterwards." It was held that the statute applied in equity as well as at law, and that, after the lapse of six years, the bar was complete.

*The Commonwealth* v. *The Cochituate Bank*, 3 Allen, 42, was also a case in equity involving a statute creating a liability on the part of the stockholders of the bank, and the same Statute of Limitations. The same conclusions were reached by the court as in the preceding case.

It is insisted by the learned counsel for the appellees that while the Limitation Act of 1712 provided that " actions of debt upon any lending or contract, without specialty," should be brought within four years, it did not limit actions of debt upon specialties; and that the liability here in question, being created by a statute, is to be regarded as falling within the latter class.

It is said that an obligation to pay money, arising under a statute, is a debt by specialty. In support of this point, *Bullard* v. *Bell*, 1 Mas. 243, has been pressed upon our attention. Fully to examine that case would unnecessarily extend this opinion. It was cited in *Baker* v. *The Atlas Bank* and in *Corning* v. *McCullough* without effect. We think it is distinguishable from the case in hand in several material points. If

it be in conflict with the cases to which we have referred in this connection, we think the results in the latter were controlled by the better reason.

If a claim like that of the appellees sued at law would have been barred at law, their claim is barred in equity. This proposition is too clear to require argument or authorities to support it.

*Decree reversed, with directions to dismiss the bill.*