### COCKRILL v. BUTLER et al.

(Circuit Court, E. D. Arkansas. February 15, 1897.)

1. STATE STATUTES OF LIMITATION—FEDERAL COURTS.

State statutes of limitation apply to proceedings, at law or in equity, in the federal courts, based upon federal statutes, state statutes, or common law. Campbell v. City of Haverhill, 15 Sup. Ct. 217, 155 U. S. 610, followed.

2. ACTIONS ON THE CASE—SUIT AGAINST NATIONAL BANK DIRECTORS.

The right of action against the directors of a national bank, for violation of the provisions of the national banking act, given by Rev. St. § 5239, is for a tort, and comes within the common-law definition of actions on the case.

3. LIMITATION OF ACTIONS—ARKANSAS STATUTE.

The Arkansas statute of limitations, providing that all special actions upon the case, for criminal conversation, assault and battery, and false imprisonment shall be brought within one year, applies to all special actions on the case, and not only to the three classes of actions specially mentioned; and it governs an action brought against the directors of a national bank, under Rev. St. § 5239.

4. SAME—FORMS OF ACTIONS—CODE OF PRACTICE.

The provision of the Arkansas Code of Practice that "the forms of all actions and suits heretofore existing are abolished" did not abolish the distinctions in the character of actions, and the statute of limitations governing "special actions upon the case" was not thereby abrogated.

Cockrill & Cockrill and J. M. Moore, for plaintiff.

Rose, Hemingway & Rose, M. M. Cohn, J. M. Rose, E. M. Kimball, and John McClure, for defendants.

WILLIAMS, District Judge.    This is a suit in equity, brought by the plaintiff, as receiver of the First National Bank of Little Rock, against the defendants, charging that they were directors of the said bank for a period of years, and seeking to fix a liability upon them as such directors under the provisions of the acts of congress and by the rules of equity.    The bill, after reciting various losses sustained by the bank during the time in which the defendants were directors thereof, charges:

"That when said bank failed its liabilities, resulting from the mismanagement of its affairs, exceeded its resources to such an extent that it became necessary for the comptroller to make an assessment of 92 per cent. on the stockholders for the purpose of paying its debts, and it is doubtful if the fund raised from such assessment will be enough to pay off and discharge all of the liabilities.  Plaintiff avers that under the provisions of the acts of congress, as well as by the rules of equity, the defendants are liable for the losses ensuing from their wrongful acts and from their neglect and failure to perform their duties, and he alleges that the bank was injured and sustained loss to a very large amount, to wit, three hundred thousand dollars, by the aforesaid misconduct and neglect of the defendants.  During all the time of the said illegal and wrongful acts the defendants, or some of them, were the directors of the bank, and constituted a majority of the board, and no suit could be brought by the corporation by reason thereof. Wherefore plaintiff prays that process issue against the defendants, requiring them to appear and answer the allegations of plaintiff's complaint, but not under oath, which is hereby waived; and upon a hearing of said cause that the defendants be required to make good all the losses sustained by said bank by reason of their misconduct and neglect to perform their duties, and that he have judgment against them, and each of them, for such sum as they may be respectively liable for, and for such other and further relief as may seem meet."

The original complaint in this case was filed and writ issued on May 22, 1894.   Various amendments have been made from time to time to the original bill, to meet objections raised by demurrers which have been heretofore passed upon by the court, and to which it is not now necessary to further refer.  The bill alleges that the First National Bank was placed in the hands of a receiver by the comptroller of the currency on the 3d day of February, 1893, and that the causes of action recited in the bill all occurred prior to that time.   The defendants interpose a demurrer to the bill as it now stands with its various amendments, by which demurrer they interpose the defense of the statute of limitations of the state of Arkansas, claiming that by said statute the cause of action is barred after the lapse of one year.   The demurrer raises four propositions:   The first is, does the state statute of limitations apply to proceedings in the federal courts, at law and in equity, whether the cause of action be based upon federal statutes, state statutes, or common law?   Second, does the cause of action in this case come within the provisions of the statute of limitations of the state of Arkansas, which is claimed to have been in full force and effect in the state of Arkansas from the year 1838 to the present time? The statute mentioned is in the following language:

"The following actions shall be commenced in one year after the cause of action shall accrue and not after: (1) All special actions on the case, for criminal conversation, assault and battery and false imprisonment; (2) all actions for

words spoken, slandering the character of another; (3) all words spoken whereby special damages are sustained." Sand. & H. Dig. § 4823.

Third, is the above-quoted statute of limitations in full force and effect in the state of Arkansas, or has it been repealed or abrogated?

It is unnecessary to take up much time in the disposition of the first proposition, i. e. does the said statute of limitations apply to proceedings in the federal courts, in law or equity, whether the cause of action is based upon federal statutes or state statutes or the common law? This court has heretofore held that this action is based upon a federal statute, to wit, section 5239 of the Revised Statutes, which is in the following language:

"If the directors of any national banking association shall knowingly violate, or knowingly permit any of the officers, agents, or servants of the association to violate any of the provisions of this title, all the rights, privileges and franchises of the association shall be thereby forfeited. Such violation shall, however, be determined and adjudged by a proper circuit, district, or territorial court of the United States, in a suit brought for that purpose by the comptroller of the currency, in his own name, before the association shall be dissolved. And in cases of such violation, every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the association, its shareholders, or any other person, shall have sustained in consequence of such violation."

This having been settled, so far as this court is concerned, the inquiry arises, does the state statute of limitations apply to this proceeding? In Carroll v. Green, 92 U. S. 509, which was a suit in equity in the United States court brought by the creditors of an insolvent bank against its stockholders to recover an amount for which they as stockholders became liable under the charter by reason of its insolvency, the state statute of limitation was interposed as a defense. The court held that it applied, using the following language:

"If a claim like that of the appellees, sued at law, would have been barred at law, their claim is barred in equity. This proposition is too clear to require argument or authority to support it."

The circuit court of appeals of the Eighth circuit, in Hayden v. Thompson, 17 C. C. A. 592, 71 Fed. 60, applied the statutes of limitation of the state of Nebraska to a suit in equity brought by the receiver of an insolvent national bank to recover from stockholders the amount paid to them in dividends improperly declared. Judge Sanborn, speaking for the court, said:

"It goes without saying that the national courts, sitting in equity, act or refuse to act in analogy to the statute of limitation of the state in which they are sitting, and that if the analogous action at law against this defendant would be barred under the statutes of Nebraska this suit must be dismissed as against him."

But the matter has been definitely settled beyond controversy by the supreme court of the United States in Campbell v. City of Haverhill, 155 U. S. 610, 15 Sup. Ct. 217. The court in that case refers to the division among the circuit courts upon the question, and reviews the arguments against the applicability of the statutes, and, in summing up, Judge Brown, speaking for the court, says:

"The truth is that statutes of limitation affect the remedy only, and do not impair the right, and that the settled policy of congress has been to permit rights created by its statutes to be enforced in the manner and subject to the limitations prescribed by the laws of the several states."

· 'So it was decided that, in a patent case, the state statute applied, although the cause of action arose out of a federal statute, and was cognizable only in the federal courts.    It may well be said, therefore, that the first proposition raised by the demurrer is definitely settled. ·  The determination of the second question involves the consideration of two propositions:    First, the nature or kind of action under which this may be classed; and, second, the intent, meaning, force, and effect of the statute of Arkansas quoted, and which it is contended governs in this case.    As to the kind of action this is, Justice Miller and Judge Thayer, in the case of Stephens v. Overstolz, 43 Fed. 465, 466, say:

."The statute [referring to the statute under which this action is brought] says, you. shall not do that, and if you do you shall be liable to all persons injured by your wrongful act.    The extent of the liability incurred is the amount of the damage you have inflicted upon others.    The terms 'wrongful act,' 'liability incurred,' and 'damages' would seem to leave no doubt that the foundation of this class of actions is a tort."

Mr. Chitty says:

· "Actions on the case are founded on common law or upon acts of parliament, and lie generally to recover damages for torts not committed with force, actual or implied."    1 Chit. Pl. 133.

He further says that "the injuries may be by nonfeasance, misfeasance, or malfeasance"; and that "these respective torts are commonly the performance or omission of some act contrary to the general obligation of the law or the particular rights or duties of the parties."    Id.    Again Mr. Chitty says:    "Wherever the statute prohibits an act, and provides for a recovery of damages caused by its violation, the remedy is an action on the case."    Id. 142.    Mr. Stephen says that an action on the case lies where a party sues for damages for any wrong to which trespass will not apply.    Steph. Pl. § 52. Judge Bliss says that trespass lies for a wrongful act committed with force, and where the injury is direct; that where the injury is not the direct result of force, but grows out of the wrongful act of defendant, the action is trespass on the case, often called "the case."    Bliss, Code Pl. § 9, subd. 2.    Then it would seem that the right of action of the receiver, as outlined by Justice Miller in the case cited (Stephens v. Overstolz), comes within the distinction of action on the case, even if there were no other authorities upon the subject.

The next proposition, then, is as to the intent and meaning of the statute of the state of Arkansas heretofore quoted:

"First, all special actions upon the case, for criminal conversation, assault and battery and false imprisonment; second, all actions for words spoken, slandering the character of another; third, all words spoken whereby special damages are sustained."

'  In the compilation of what is known as "Gantt's Digest of the Statutes of the State of Arkansas," the clause "all special actions on the case" was omitted, and the act as digested reads as follows:

"The following actions shall be commenced within one year after the cause of action shall accrue and not after:    First, all actions for criminal conversation, assault and battery and false imprisonment; second, all actions for words spoken, slandering the character of another; third, all words spoken whereby special damages are sustained."    Section 4121.

The question is, did the original act cover all special actions on the case, or only all actions for criminal conversation, assault and battery, and false imprisonment? It may be that the latter would be the natural reading if these three kinds of actions had been special actions on the case, but they were not actions on the case, but were actions of trespass, so that the only construction of the provision is that it was intended to cover all special actions on the case, and also the three kinds of actions of trespass specially mentioned. The question of its interpretation was presented to the supreme court of the state of Arkansas in Patterson v. Thompson, 24 Ark. 70, where it was held that it applied to all actions on the case, and that an action for seduction, not mentioned, but coming within it, must be brought within one year. The court in that case used the following language:

"It is insisted here for the appellant, the defendant below, that the first specification of the section should be construed as if it read: 'All actions on the case, all actions for criminal conversation, all actions for assault and battery, and all actions for false imprisonment;' and the inference is then made that this, being a special action on the case, is included within the statute; while the argument for the plaintiff maintains that, as no mention is made of an action for seduction, this suit falls within the provision for unenumerated actions, for which the period is five years. If the statute were written as the defendant would have it construed, it would provide with consistency for similar classes of cases, in forcing an early legal inquiry into initiating causes of action, or in wisely committing to legal oblivion such as should not be made the subjects of prompt complaint, while the literal and technical construction of the plaintiff would keep the door open for vexatious controversies longer than is allowed for actions of trespass upon lands, for taking or injuring goods, for libels, and for actions upon the case founded on a contract or liability, thus reversing the whole policy of our limitation law. And if the construction should be that the clause under consideration only embraced special actions on the case for the wrongs specified in it, there would be the incongruity of different periods of limitation for the same causes of action when prosecuted in the different forms allowed by the common law; as, one year for actions on the case for batteries and false imprisonments, and five years when the same acts were complained of in actions of trespass. Doubtless, the obvious and natural, and therefore the first, construction of any writing, is that of its literal expression; but in construing a statute, unless its terms are entirely free from ambiguity, regard must be had for its known object, to the mischief intended to be provided against, to its general spirit and intent. The limitation law of the Revised Statutes, in all its sections, is to be construed as one law. All its parts should be harmonized into one consistent whole. Its object was to provide a limit for the beginning of all common or important actions, although there is a provision for unspecified ones; and its undoubted policy is to close the courts early against actions that embrace or engender personal strifes and embittered feelings, destroy the peace of families, and disturb the repose of society; and it should have such sensible construction as will accord with its spirit and promote these objects. We therefore hold that an action seeking to recover damages for seduction must be begun within a year from the time the cause of action accrued."

This, in the opinion of the court, disposes of the proposition as to the intent and meaning of the statute of the state of Arkansas referred to, and that it embraced all special actions on the case.

The next question for consideration is whether the statute quoted was abrogated by the Code of Practice adopted by the legislature of the state of Arkansas in 1868, which provides that "the forms of all actions and suits heretofore existing are abolished." The statute referred to was never directly repealed by any act of the legislature of the state of Arkansas, so it must be of full force and effect,

unless it was abrogated by the adoption of the Code of Practice in 1868. The language of that Code of Practice, which provides that "the forms of all actions and suits heretofore existing are abolished," is common to all Codes of Practice. It is a well-settled rule that the repeal of statutes by implication is not favored, and that statutes of limitation should be considered as being of full force and effect unless they are repealed directly or abrogated in some manner; for the tendency of all modern legislation is in this respect uniform and progressive. It shortens the time previously given for the bringing of suits of all kinds, and the contention of counsel for the plaintiff in this case, that the adoption of the Code changed the statute, requires strong argument and well-considered precedents to support and uphold it. Judge Bliss, in his excellent work upon the Code, speaking upon this subject, says (section 5):

"But it is only the form and name of the action that is abolished. Distinctions between the character of different actions necessarily arise from the nature of the wrong which is suffered and of the relief which is sought, and these cannot be abolished."

Again (section 6):

"Although the names and forms of actions have been thus abolished, it must not be supposed that the time spent in learning the distinctions indicated by them has been spent in vain. The mere formulas are of little present practical consequence, but, aside from the importance of knowing our legal history, including the history of the law of procedure, most of these names will be in constant requisition, as indicating the nature of the grievance, the evidence required, and the measure of relief. The whole case often clusters around the name, and an action is just as much an action of trover or of replevin or of ejectment as though so called in the pleading. When the statute says that there shall be but one form of action, form, and not substance, is spoken of. Without classification there is no science. Such distinctions as exist in the nature of things must be recognized, and they are equally recognized whether a specific name be given to the suit or action with a corresponding formula or whether they arise from and are known only by the nature of the grievance and the character of the relief." Bliss, Code Pl. §§ 5, 6.

Much light is thrown upon this question by the adjudications of the courts in what may be termed the "Code states," such as New York and Kentucky. In the case of Austin v. Rawdon, 44 N. Y. 71, the court says:

"Although the form of all actions at law and suits in equity, and all the forms of pleading existing before the Code, were thereby abolished, and it is sufficient to state in a plain and concise manner the facts constituting the cause of action, yet the substantive distinctions between actions on contract and those founded on tort still exist."

In De Graw v. Elmore, 50 N. Y. 1, the court says that:

"Notwithstanding forms of actions are abolished, the law will not permit a recovery upon tort, where the evidence shows a right to recover upon contract."

In Turnpike Co. v. Rogers, 7 Bush, 532, the court of appeals of Kentucky says:

"Forms have been abolished, but the substance of the common-law rules of procedure remains, except where they conflict with the spirit of our statutory regulations upon the subject of pleading and practice. Since the distinction between actions has been abolished by our Code, a petition which goes for a forcible injury should state such facts as would be equivalent to an action of trespass at common law. If the trespass be waived, and the petition go for negligence or

want of skill, it should state facts which are equivalent to an action in case, according to common-law principle."

In the state of California there is but one form of action under the Code. In Railway Co. v. Laird, 17 Sup. Ct. 120–122, Laird, who was injured while a passenger, brought suit in the United States court for damages. The case went to the supreme court of the United States, where it was contended that the action was changed by amendment from an action on tort to one on contract; that the amendment was not made until four years after the injury, and therefore it was barred. The supreme court in that case recognized the existence of the distinctions between actions arising upon contract and from tort. The opinion in that case was delivered by Justice Peckham, using the following language:

"The doctrine is very clearly expressed in Kelly v. Railway Co. [1895] 1 Q. B. 944, where the court of appeals held that an action brought by a railway passenger against a company for personal injuries caused by the negligence of the servants of the company while he was traveling upon their line was an action founded upon tort. In reading the judgment of the court in that case, A. L. Smith, L. J., said (page 947): 'The distinction is this: If the cause of complaint be for an act of omission or nonfeasance which, without proof of a contract to do what has been left undone, would not give rights to any cause of action (because no duty apart from contract to do what is complained of exists), then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from the relationship, irrespective of contract, to take due care, and the defendants are negligent, then the action is one of tort.' "

But we are not left without light upon this subject from the highest tribunal in this state, the supreme court of the state of Arkansas. In Chrisman v. Carney, 33 Ark. 316, Carney brought suit against Chrisman on two counts, on the first for false imprisonment, and on the second for malicious prosecution. It was objected that the two causes could not be joined. The court said:

"The first was at common law an action of trespass, and the other an action on the case. The form of action being now abolished, they may be joined under the class of injuries to the person, but the requisites to constitute the injury, and the proof necessary to be made to sustain either paragraph, are the same as formerly."

In O'Connell v. Rosso, 56 Ark. 603, 20 S. W. 531, the court said it was not plain whether the plaintiff intended to state a cause of action for a breach of contract or a tort in the nature of trespass; that, if the former was intended, a charge as to exemplary damages was improper, because the circumstances attending a breach of contract could not affect the amount of a recovery, but, if the latter, it was proper, and, as the defendant made no objection to the complaint because of its uncertainty, the court was correct in charging upon either aspect of it. In Fordyce v. Nix, 58 Ark. 136, 23 S. W. 967, which was an action by a passenger for failure to let him off at his station, and for insulting and abusive language on the part of the conductor, it was objected upon demurrer that a claim for breach of contract to let the plaintiff off at his station could not be joined with a claim for damages sustained by abusive and insolent treatment, but the court said:

"Under the reformed procedure courts regard the substance rather than the form. As was said by the supreme court of Mississippi in a very similar case: 'The character of the action must be determined by the nature of the grievance rather than the form of the declaration.' Railroad Co. v. Hurst, 36 Miss. 660."

The supreme court of Arkansas held that the action was in its nature ex delicto, and that there was no misjoinder.

So it is apparent that the supreme court of the state of Arkansas recognizes the distinction between actions for torts and upon contract as existing since the adoption of the Code as completely as that distinction existed before the adoption of the Code; and I am unable to see any good reason for the proposition that the statute referred to has been in any manner changed, repealed, or abrogated by the adoption of the Code of Practice of the state of Arkansas. A statute of limitation must be treated as any other statute, because, as held by Justice Brown in Campbell v. City of Haverhill, 155 U. S. 617, 15 Sup. Ct. 217, such statutes are now considered highly meritorious, and should be upheld and enforced by the federal courts in cases where they are applicable. The argument that, because the statute of limitations applies to actions on the case, and the provisions of the Code abolish all forms of actions, therefore actions on the case are abolished, and the statute of limitations has nothing to which it can apply, is, in the opinion of the court, not tenable. The term "actions on the case" was not indicative of any form of action, but of a substantive class of actions of many different species that took their name from the fact that they were not included within any of the common forms of writs issuing from chancery, but were begun by writs setting out the particular circumstances of the case. Mr. Blackstone says of it:

"This action of trespass, or transgression on the case, is an universal remedy, given for all personal wrongs and injuries without force; so called because the plaintiff's whole case or cause of complaint is set forth at length in the original writ." 3 Cooley, Bl. Comm. (3d Ed.) 122.

So it would seem that the term is not only not indicative of a form of action, but that it applied to a class of actionable wrongs for which there was no appropriate form of writ, but a special writ issued, setting out the circumstances of the case. Mr. Stephen, in his work on Pleading, says:

"The new writs have received accordingly the appellation of 'writs of trespass on the case,' as being founded on the particular circumstances of the case thus requiring remedy, and to distinguish them from the old writ of trespass, and the injuries themselves which are the subjects of such writs are not called 'trespasses,' but have the general name of 'torts,' 'wrongs,' or 'grievances.'" Stephen, Pl. § 52.

In Carroll v. Green, 92 U. S. 509, Mr. Justice Swayne says:

"The forms of the writ were as diverse as the wrongs they remedied, and the action of trespass on the case comprised many species."

The statute of limitations of the state of Arkansas was not designed to operate upon actions because of their name or form, but because of the wrongs they were brought to remedy. If the name "action on the case" had been changed, the statute would still have applied. It was aimed at the substance, and not at the name or

form, of the action, and it were folly to hold that its effect was changed merely because the name or the form of the action had been changed, so long as the same class of wrongs was entitled to the same remedy upon allegations substantially the same. And the fact that an act might give rights to two different kinds of action, to which different statutes of limitation would apply, is not an argument that the one-year statute of limitations is inoperative. It seems to me that the wrongs complained of in this case gave a remedy by but one action at law, an action on the case; and if the plaintiff has invoked the equity jurisdiction of this court in order to prevent a multiplicity of actions, or to have an accounting, and for these reasons alone, or for any other reason of like character, the essential nature of the action is unchanged, and equity only gives a different forum for the same cause of action, and there is no different cause of action, whether it be in law or in equity. Morawetz, in discussing the right of a shareholder on behalf of a corporation to sue the directors for damages occasioned by their misconduct, says:

"A suit of this character is brought to enforce the corporative or collective rights, and not the individual rights, of the shareholder. It may therefore be properly regarded as a suit on behalf of the corporation. The essential character of a cause of action remains the same. Thus a legal right of action would not be treated as an equitable one, or become governed by the rules applicable to equitable causes of action as to limitations, etc., because the shareholder brought suit in equity." 1 Mor. Priv. Corp. § 271.

And the same was virtually held in Hayden v. Thompson, 17 C. C. A. 592, 71 Fed. 60; Carroll v. Green, 92 U. S. 509.

I am clearly of the opinion that the operation of the state statute is not defeated by the provisions of section 1047 of the Revised Statutes of the United States, because, in my judgment, this federal statute is not applicable. Whether the bill be regarded as seeking to recover for damages caused by a breach of duty at common law, in equity, and under the statutes of the United States, as it distinctly avers, or merely for a breach of duty under the statute, this is not a suit for a penalty, but for damages. The statute does not give a liquidated amount by way of penalty, but provides for exact compensation to whoever is damaged by its breach. In Stephens v. Overstolz, 43 Fed. 465, the question whether the statute was penal or remedial was presented and decided. There Justice Miller held that the statute was remedial, and not penal, since the extent of the liability is the amount of the damage. It follows from these views that the demurrer to the bill should be sustained; and it is so ordered.