CITY OF ATLANTA v. CHATTANOOGA FOUNDRY & PIPE CO.

MANION et al. v. SAME.

(Circuit Court, E. D. Tennessee, S. D. May 5, 1900.)

Nos. 647, 599.

1. MONOPOLIES—ACTION FOR DAMAGES UNDER ANTI-TRUST ACT—LIMITATION.

An action under Anti-Trust Act (Act July 2, 1890; 26 Stat. 210) § 7, providing that "any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act may sue therefor in any circuit court of the United States, * * * and shall recover three fold the damages by him sustained," is not an action for a penalty or forfeiture, within Rev. St. § 1047, prescribing a limitation of five years for a "suit or prosecution for any penalty or forfeiture, pecuniary or otherwise, accruing under the laws of the United States," but one for the enforcement of a civil remedy for a private injury, compensatory in its purpose and effect, the recovery permitted in excess of damages actually sustained being in the nature of exemplary damages, which does not change the nature of the action, and such action is governed as to limitation by the statutes of the state in which it is brought.

2. SAME—TENNESSEE STATUTE.

An action brought under such section, in which the right of recovery is based on an alleged exorbitant charge made by defendant to plaintiffs for manufactured articles purchased, by reason of a combination or trust entered into by defendant with others for the purpose of monopolizing trade in violation of the act, is for an injury to personal property, and comes within Shannon's Code Tenn. § 4470, which prescribes a limitation of three years for "actions for injuries to personal or real property," being, in effect, the same as an action on the case for the recovery of the money which plaintiffs were illegally compelled to pay in excess of the fair market value of the articles purchased.

On Demurrers to Pleas Interposing the Defense of the Statute of Limitations of Tennessee.

Pritchard & Sizer, for Manion & Co.

C. P. Gore, L. A. Dean, Westmoreland Bros., and J. L. Faust, for city of Atlanta, Ga.

Brown & Spurlock, for Chattanooga Foundry & Pipe Co.

CLARK, District Judge. These suits are brought to recover damages under section 7 of the so-called "Anti-Trust Act" of congress of July 2, 1890, which reads as follows:

"Any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act, may sue therefor in any circuit court of the United States in the district in which the defendant resides or is found, without respect to the amount in controversy, and shall recover three fold the damages by him sustained, and the costs of suit, including a reasonable attorney's fee."

The first-named case is a suit on behalf of the city of Atlanta, Ga., a municipal corporation, and the second on behalf of plaintiffs, who aver that they are contractors engaged in the business of furnishing and laying gas, water, and sewer pipes in the city of New Orleans, La. The defendant heretofore has been, and now is, engaged in the business of manufacturing and selling cast-iron pipe and fittings, used for the purposes of public drainage and sewerage, and by gas and water companies in the business of operating gas and water plants. The declarations in the two cases vary slightly in the form of statement of the case. Both suits are actions on the case, and, in substance, proceed upon the ground that the defendant entered into an unlawful trust or combination with others for the purpose of monopolizing trade in violation of the anti-trust act. The trade combination or trust complained of here was involved in Addyston Pipe & Steel Co. v. U. S., 175 U. S. 211, 20 Sup. Ct. 96, Adv. S. U. S. 96, 44 L. Ed. ——, and is there fully described. The plaintiffs in each case became purchasers of the manufactured product of the defendant in large quantities, and at prices set out in the declarations. It is charged with sufficient detail that by reason of the unlawful combination and trust contract entered into, the defendants were enabled to advance, and did advance, the price on their manufactured goods, and that the plaintiffs were, in consequence, compelled to pay an exorbitant and unfair price, which is called a "bonus," on the goods purchased. The estimated difference between the just and fair market price of the goods and the price actually paid is stated in figures, and the specific damages claimed are laid at this difference between the fair price of the goods and the trust price paid, the declarations concluding with an averment of the right to increase the actual damages sustained threefold, as authorized by the act. Besides other pleas, the defendant interposes as a defense the state statute of limitations of one and three years, as found in the Code of Tennessee (Shannon's Revisal), §§ 4469, 4470,—the former section prescribing a limitation to actions for statute penalties, injuries to the person, and other civil wrongs, not necessary to be noticed; and the latter prescribing a limitation period of three years for injuries to property, real and personal. To these pleas the plaintiffs demur upon the ground that section 1047 of the Revised Statute applies to the actions, and that the state statute is inapplicable.

The case, in respect of the issues thus presented, turns in part on the distinction between a penalty, as such, imposed by statute for a breach of its provisions, by way of punishment for the act,

and in the public interest on the one hand, and a private remedy conferred on a person specially injured by the unlawful act, and by way of compensation for the injury sustained, on the other. If the action authorized by section 7 is a penalty in the sense indicated, it might be conceded for the moment, or for the purposes of the question now to be decided, that section 1047 of the Revised Statutes would be applicable, and under that view the demurrer would be well taken. On the other hand, if the suit is not in its nature and substance a penal action, but a civil remedy for a private injury, compensatory in its purpose and effect, the action is subject to the state statute of limitations applicable to cases of this class, if there be such a statute. Campbell v. City of Haverhill, 155 U. S. 610, 15 Sup. Ct. 217, 39 L. Ed. 240; Brady v. Daly, 175 U. S. 148, 20 Sup. Ct. 62, Adv. S. U. S. 62, 44 L. Ed. ——. In the last case cited Mr. Justice Peckham, giving the opinion of the court, said:

"The court below was, as is stated in the opinion, somewhat influenced in its decision of this question by the belief that, if this were not a penal statute, there was no federal statute of limitations applicable to it, and said that it could hardly be supposed that it was the intent of congress to permit such a statutory rate of damages to run without federal statutory limitation. If there were no such federal statute, then the state statute would apply. Although not an action to recover a statutory penalty or forfeiture, still, in the absence of any federal statute of limitations, it would be limited by the limitation existing for the class of actions to which it belongs in the state where the action was brought. Campbell v. City of Haverhill, 155 U. S. 610, 614, 15 Sup. Ct. 217, 39 L. Ed. 270."

See, also, Cockrill v. Butler (C. C.) 78 Fed. 679.

Section 1047 of the Revised Statutes prescribes limitations as follows:

"No suit or prosecution for any penalty or forfeiture, pecuniary or otherwise, accruing under the laws of the United States, shall be maintained, except in cases where it is otherwise specially provided, unless the same is commenced within five years from the time when the penalty or forfeiture accrued: provided, that the person of the offender, or the property liable for such penalty or forfeiture, shall, within the same period, be found within the United States; so that the proper process therefor may be instituted and served against such person or property."

It is necessary, therefore, to determine the question whether the suits are essentially penal or civil actions in their object and result. This question whether the action authorized is intended as a punishment or as compensation obviously involves the distinction between a civil remedy and a penal action in its primary or international meaning, this being the sense which was under consideration in the leading case of Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. 224, 36 L. Ed. 1123, in which Mr. Justice Gray, for the court, said:

"In the municipal law of England and America, the words 'penal' and 'penalty' have been used in various senses. Strictly and primarily, they denote punishment, whether corporal or pecuniary, imposed and enforced by the state for a crime or offense against its laws."

In the previous case of Wisconsin v. Pelican Ins. Co., 127 U. S. 265, 8 Sup. Ct. 1370, 32 L. Ed. 239, Mr. Justice Gray, for the court, had said:

"The rule that the courts of no country execute the penal laws of another applies not only to prosecutions and sentences for crimes and misdemeanors,

but to all suits in favor of the state for the recovery of pecuniary penalties for any violation of statutes for the protection of its revenue, or other municipal laws, and to all judgments for such penalties."

In Huntington v. Attrill [1893] App. Cas. 150, before the privy council of England, precisely the same question was in judgment as that involved and decided in Huntington v. Attrill, supra, the suit being between the same parties. Lord Watson, delivering the judgment of their lordships, quoted the above passage from Wisconsin v. Pelican Ins. Co., rendering in italics the words "but to all suits in favor of the state," and then went on to say:

"Their lordships do not hesitate to accept that exposition of the law which, in their opinion, discloses the proper test for ascertaining whether an action is penal within the meaning of the rule. A proceeding, in order to come within the scope of the rule, must be in the nature of a suit in favor of the state whose law has been infringed. All the provisions of municipal statutes for the regulation of trade and trading companies are presumably enacted in the interest and for the benefit of the community at large; and persons who violate these provisions are, in a certain sense, offenders against the state law, as well as against individuals who may be injured by their conduct. But foreign tribunals do not regard these violations of statute law as offenses against the state, unless their vindication rests with the state itself, or with the community which it represents. Penalties may be attached to them, but that circumstance will not bring them within the rule, except in cases where these penalties are recoverable at the instance of the state, or of an official duly authorized to prosecute on its behalf, or of a member of the public in the character of a common informer. An action by the latter is regarded as an actio popularis pursued, not in his individual interest, but in the interest of the whole community."

In Dicey, Confl. Laws, p. 220, the general proposition is laid down (as rule 40) that the high court of justice in England cannot entertain an action for the recovery of a penalty due under the laws of a foreign country, or an action on a foreign judgment for such penalty. Upon the authority of leading cases cited, the rule is then commented on as follows:

"What is a penal law? The application of rule 40 raises the difficult question, when is a law to be considered a penal law? Or, what is really the same inquiry under another form, when is an action to be considered a penal action? These inquiries are to be answered as follows: A 'penal law' is strictly and properly a law which imposes punishment for an offense against the state; and a 'penal action' is a proceeding for the recovery, in favor of the state, of a penalty due under a penal law. A law, on the other hand, is not a penal law merely because it imposes an extraordinary liability on a wrongdoer, in favor of the person wronged, which is not limited to the damages suffered by him; and an action for enforcing such liability by the recovery of the penalty due to the person wronged is not a penal action. The essential characteristic, in short, of a penal action is that it should be an action on behalf of the government or the community, and not an action for remedying a wrong done to an individual. A proceeding, then, in order to come within rule 40, must be in the nature of a suit in favor of the state whose law has been infringed."

This question of distinction between penal actions brought by a common informer, or on behalf of the state, to redress a public wrong, and remedial actions brought by the party injured to redress a private wrong, has been under consideration in many adjudged cases. 13 Am. & Eng. Enc. Law (2d Ed.) 52; 16 Enc. Pl. & Prac. 229, where the subject will be found fully treated, and the cases cited.

It is quite obvious that no sound reason could be suggested why congress would have been concerned in prescribing a limitation to actions for penalties or forfeitures other than such as are prosecuted in favor of the United States for breaches of public law, punishable by pecuniary mulct, or otherwise, at the instance of the United States. In Campbell v. City of Haverhill, the court said:

"Is it not more reasonable to presume that congress, in authorizing an action for infringement, intended to subject such action to the general laws of the state applicable to actions of a similar nature? In creating a new right and providing a court for the enforcement of such right, must we not presume that congress intended that the remedy should be enforced in the manner common to like actions within the same jurisdiction."

This language is equally applicable to the remedy provided by section 7 of the act in question.

In examining the question of what "suit or prosecution for any penalty or forfeiture, pecuniary or otherwise, accruing under the laws of the United States," is within the purpose and meaning of section 1047, it would seem that reference may, with propriety, be made to section 919 as possibly throwing light on the inquiry, in which it is provided that:

"All suits for the recovery of any duties, imposts, or taxes, or for the enforcement of any penalty or forfeiture provided by any act respecting imports or tonnage, or the registering and recording or enrolling and licensing of vessels, or the internal revenue, or direct taxes, and all suits arising under the postal laws, shall be brought in the name of the United States."

The action provided for in section 7 of the act could neither be brought in the name of the United States, nor prosecuted as a popular or qui tam action, the remedy being expressly restricted to the party "injured in his business or property." The phraseology of the proviso in section 1047 must be regarded as somewhat significant as to the character of the prosecution within the legislative purpose. In view of these and other provisions of the Revised Statutes, and of the doctrine of more recent cases, it seems permissible to entertain serious doubt whether section 1047 applies, or was intended to apply, to suits other than those prosecuted in behalf of the United States. But, be this as it may, I conclude that this is not a penal action, and the recovery sought is not a penalty within the sense here involved, which is substantially the same as the international sense.

In Brady v. Daly the case was considered with reference to jurisdiction, as well as the statute of limitations, and the case at bar, in principle, is undistinguishable from that case, and is governed by it. Mr. Justice Peckham, giving the opinion of the court (page 154, 175 U. S., page 64, 20 Sup. Ct., page 64, Adv. S. U. S., and page ——, 44 L. Ed.), said:

"The statutes, it will be perceived, all use the word 'damages' when referring to the wrongful production of a dramatic composition. No word of forfeiture or penalty is to be found in them on that subject. It is evident that in many cases it would be quite difficult to prove the exact amount of damages which the proprietor of a copyrighted dramatic composition suffered by reason of its unlawful production by another, and yet it is also evident that the statute seeks to provide a remedy for such a wrong, and to grant to the proprietor

the right to recover the damages which he has sustained therefrom. The idea of the punishment of the wrongdoer is not so much suggested by the language used in the statute as is a desire to provide for the recovery by the proprietor of full compensation from the wrongdoer for the damages such proprietor has. sustained from the wrongful act of the latter."

The reasoning thus adopted is forcibly applicable to the cases at bar.·
In Pidcock v. Harrington (C. C.) 64 Fed. 821, the main question was whether the anti-trust act conferred on a private person a right. to sue in equity to restrain the act forbidden by the statute. It was determined that an action at law for damages was the only remedy of a private person. In analyzing the statute, Judge Coxe said:

"The first three sections are penal statutes. They give no civil remedy. Section 4 vests the right to institute proceedings in equity in the district attorneys of the United States, and, together with section 5, prescribes the procedure; in such suits. Section 6 provides for the seizure and forfeiture to the United States of property illegally owned under the provisions of the act. So far, then, the act is a public act providing no private remedy. If it ended with section' 6, there would probably be no pretense that it sanctioned a suit like the one at bar. What follows, however, in no way strengthens the complainant's position. The only section which gives a private remedy is the seventh, which is as follows." Then, setting out section 7 in the very language of the stat-. ute, the court proceeded to say: "But for this section, no private person would have any standing in court, and, as the only right conferred by it is' the right to sue for damages in a court of law, it follows that the point presented by the demurrer is well founded. The precise question was decided in: favor of the views here expressed in Blindell v. Hagan (C. C.) 54 Fed. 40, affirmed in 56 Fed. 696, 6 C. C. A. 86."

See, also, 14 Enc. Pl. & Prac. 55.
It is insisted by plaintiffs' counsel that, in so far as the statute authorizes the recovery of damages above those actually sustained, the actions must be regarded as penal. As, undoubtedly, the chief object of this section of the statute is remedial and protective, the fact that damages above actual compensation are allowed· would not change the real character of the action. In many civil actions for the redress of private wrongs, exemplary or punitive damages may be allowed by the court or jury, but this does not make the action penal. As was said by the supreme court of the United States in Railway Co. v. Humes, 115 U. S. 512, 6 Sup. Ct. 110, 29 L. Ed. 463:

"The injury actually received is often so small that in many cases no effort would be made by the sufferer to obtain redress if the private interest were not supported by the imposition of punitive damages."

In suits for the infringement of patents in the event a verdict is rendered for the plaintiff, the court is expressly authorized to enter judgment for any sum above the amount found by the verdict as actual damages, not exceeding three times the amount of the verdict, together with the costs (Rev. St. § 4919); and under section 4921, a court of equity, when exercising jurisdiction, is empowered in like manner to increase the damages found; the statute providing:

"And the court shall have the same power to increase such damages, in its discretion, as is given to increase the damages found by verdicts in actions in the nature of actions of trespass upon the case."

Nevertheless, Campbell v. City of Haverhill was an action on the case for infringement of letters patent, in which it was adjudged that the statute of limitations of the several states applied to such actions, and the suggestion that the action was penal evidently did not occur to counsel or the court.

Another view affecting the proper interpretation of the statute should be mentioned in closing the discussion of this point in the case. Section 3 of the statute declares unlawful and prohibits every trade combination or trust contract, and inflicts punishment for a violation of the statute by enacting that:

"Every person who shall make any such contract or engage in any such combination or conspiracy, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding five thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court."

It would be unusual to discover that a statute inflicted punishment for infringement of its provisions by fine and imprisonment, or either, and again in the form of pecuniary penalty for the same act. A sound rule of interpretation would be that when a statute inflicts punishment by way of fine and imprisonment at the suit of the state for a public wrong affecting the whole community, and also confers a remedy on a party for private injuries resulting from breaches of the statute, the latter will not be regarded as a penalty unless the statute so declares. It was accordingly so decided by the supreme court of Ohio in Railway Co. v. Methven, 21 Ohio St. 586. A statute providing for a fine or penalty usually either fixes the amount, or prescribes maximum and minimum limits within which the amount must be fixed by the court or jury, as the punishment, and the amount bears no direct relation to damages sustained by private injury. The amount of damages which may be recovered in the remedial action afforded by section 7 of the act in question is determined by the injury sustained, and the actual compensation therefor increased to treble that amount. The damages actually claimed here in the first case are laid at the sum of $50,000, and in the second $20,000. The great disproportion between these sums and the maximum limit of the fine imposed by section 3 is a circumstance admitting of no rational explanation, if the damages recovered under section 7 must be regarded as a penalty inflicted as punishment, like the fine imposed under section 3. These and other characteristic points of difference between penal and remedial actions support the conclusion arrived at that these actions are remedial and compensatory only.

The question now remains whether the statute of limitations of the state relied on is applicable to these actions, or actions of the class to which they belong. The statute (Shannon's Code, § 4466) expressly declares the legislative purpose and intent to prescribe a bar to "all civil actions other than those for causes embraced in the foregoing article," the limitation of real actions having been provided in the preceding article. Sections then follow prescribing a period of limitation to various suits, such as actions for injuries to the per-

son, and statute penalties, among which is section 4470, which reads as follows:

"Actions for injuries to personal or real property; actions for the detention or conversion of personal property, within three years from the accruing of the cause of action."

The words "personal and real property" are by the Code itself (section 63) thus defined:

"The word 'property' includes both personal and real property; the words 'personal property' include money, goods, chattels, things in action, and evidences of debt: 'real estate,' 'real property,' 'lands,' include lands, tenements and hereditaments, and all rights thereto and interests therein, equitable as well as legal."

A definition of "personal property," as given by a critical writer, and fully sustained by authority, is in these words:

"Personal property includes every kind of chose in action, using that term in its very widest sense. It includes, that is to say, every movable which cannot be touched, or intangible movable. Thus it includes 'debts,' in the strict sense of the term, and also everything (not an immovable) which can be made the object of a legal claim; as, for example, a person's share in a partnership property." Dicey, Confl. Laws, p. 313.

See, also, 1 Schouler, Pers. Prop. (3d Ed.) 2–17.

It will be observed that by the very terms of the act of congress, the remedy of a suit to recover damages is only conferred on "any person who shall be injured in his business or property." The suits in these cases must, therefore, necessarily be construed as actions to recover damages for an injury to "business or property."

The plaintiff in the first-named case is engaged in no business whatever, and the plaintiffs in the second case are engaged in the business of taking contracts to furnish and place in position pipes and fittings. They do not deal in or handle pipes and fittings as merchants or dealers would do. It will admit of question whether, in an action under the statute for an injury to business alone, it would not be necessary for a plaintiff to allege that he was engaged in interstate trade or commerce, in order to come within the protection of the act. Dueber Watch-Case Mfg. Co. v. E. Howard Watch & Clock Co. (C. C.) 55 Fed. 851; Bishop v. Preservers' Co. (C. C.) 51 Fed. 272. In Lowry v. Association (C. C.) 98 Fed. 817, facts are disclosed which, in respect of both the character of business and method of injury to such business, bring the case within the anti-trust act. However, the injuries alleged in the declarations as grounds for recovery are not injuries to any business in which the plaintiffs were engaged. The suits are clearly for the recovery of the difference between the fair market value of the goods purchased and the unlawful prices arbitrarily fixed by the trust combination; or, stated in another form, the suits are to recover back, as damages, the sums of money unlawfully demanded and paid, increased threefold by the express direction of the act. Now, money has been declared to be personal property, not only by state statute, but again and again by text writers and in judicial statement. Confessedly, the declarations present no case of an injury to property at all unless it is personal property. I am unable to perceive that the actions are for injuries other than to personal property.

· The contention, finally, is that section 4470 of Shannon's Code of Tennessee is applicable only when the injury is direct. Such an interpretation would disregard all progress, and carry us back to the old action of trespass. Before the reformed code systems of pleading adopted in most of the states, the action on the case had, by wide application, become the remedy for every wrong or injury to personal property to which trespass would not apply. Trespass upon the case would lie for every civil wrong to chattels personal, whether corporeal or incorporeal, and whether the injury was direct and immediate or indirect and consequential. And. Steph. Pl. § 52; Bish. Noncont. Law, § 45; Cooley, Torts (2d Ed.) 510; Poll. Torts (5th Eng. Ed.) pp. 13, 22, 495. See, also, Carrol v. Green, 92 U. S. 509, 23 L. Ed. 738; Railway Co. v. Clark, 38 U. S. App. 573, 20 C. C. A. 447, 73 Fed. 76, 74 Fed. 362; Cockrill v. Butler (C. C.) 78 Fed. 679. No valid reason could be suggested for a construction of the statute which would restrict its application within such narrow limits in view of the wide and various applications of actions on the case. The words of the statute, "actions for injuries to personal or real property," are general, and in no wise restricted by the specific mention of actions for detention or conversion. If, indeed, money unlawfully obtained as alleged in these declarations is not a direct injury, the civil wrong belongs to a class for the redress of which trespass on the case had been a long-used remedy at the time of the adoption of the Code. In 1 Add. Torts (6th Ed.) § 27, it is said:

· "If one man has obtained money from another through the medium of oppression, imposition, extortion, or deceit, or by the commission of a trespass, such money is, in contemplation of law, not the money of the wrongdoer, but of the injured person, whose title to it cannot be destroyed and annulled by the fraudulent and unjust dispossession."

The author then, declaring that an action will lie to recover back money paid under such conditions, continues:

"Such an action also lies against all persons who extort money for doing what they are by law bound to do without payment or reward, or who receive, and have in their possession, and wrongfully detain, the money of another; 'for,' as it has been observed, 'no man will venture to take, if he knows he is liable to refund.'"

The doctrine is supported by reference to cases in which it was decided that money may be recovered back when wrongfully paid under different circumstances. Thus, excessive charges demanded by a carrier of goods for transportation, and paid by the consignee in order to get possession, would support an action to recover back the excess. So, of money paid under the coercion of threatened litigation, or money unlawfully demanded and received by a revenue officer for the release of goods seized, or other like payments wrongfully demanded and taken. In 2 Greenl. Ev. (16th Ed.) § 224, the distinction between an action of trespass and an action on the case is stated clearly, and in the fewest words possible, thus:

"By the former, redress is sought for an injury accompanied with actual force; by the latter, it is sought for a wrong without force."

And in reference to the character of the injury which would support an action on the case it is further observed:

"So, though the property was forcibly taken, the force may be waived, and trover, which is an action on the case, may be sustained, for the value of the goods." Id. § 226.

The extended use of the action of trespass on the case is well indicated by the following definition, which has been generally accepted as accurate:

"The writ of trespass upon the case lies where a party sues for damages for any wrong or cause of complaint to which covenant or trespass will not apply." And. Steph. Pl. § 52.

See, also, upon this subject, Cockrill v. Butler (C. C.) 78 Fed. 679, and authorities there cited.

The circumstance that an exorbitant price for a commodity arbitrarily fixed by a trust combination is demanded and received through the medium of a contract of purchase in no wise affects or changes the real nature of the injury as an unlawful taking and detention. "The commission of an act specifically forbidden by law, or the omission or failure to perform any duty specifically imposed by law, is generally equivalent to an act done with intent to cause wrongful injury. Where the harm that ensues from the unlawful act or omission is the very kind of harm which it was the aim of the law to prevent (and this is the commonest case), the justice and necessity of this rule are manifest without further comment." Poll. Torts (5th Ed.) p. 23.

In Conk v. Railroad Co., 1 Tenn. Cas. 409, possession of the goods was obtained through a contract for transportation, and the action was for the value of the goods. "The action," said the supreme court, "is for the detention or conversion of the plaintiff's property. It is true, the contract for carrying the goods is averred, and that the defendant failed to comply with it. Yet the gist of the action is the detention or conversion of the property, by which it was lost to the plaintiff." It was held that three years was the limitation.

In the light of this exposition of the law in respect of the form and proper application of the older and well-defined remedies, the inquiry into the legislative purpose disclosed in the section of the Code with which I am dealing ought not to involve a question of interpretation which will not admit of satisfactory answer. The Code of 1858 is a systematic compilation enacted as such, every part of which must be read in view of this circumstance, and not as an independent enactment. Forms of actions were abolished by the Code, and the statute of limitations does not depend on the form, but on the cause, of action. Conk v. Railroad Co., 1 Tenn. Cas. 409. In construing the words "actions for injuries to personal or real property," as found in section 4470, it seems allowable to refer to sections 4437 and 4438 in the preceding chapter, under the same title, both chapters belonging to part 3 of Shannon's Code, which treats "Of the Redress of Civil Injuries." In the sections last referred to the Code undertakes to deal with all actions in the well-recognized classes of actions ex contractu and ex delicto, and to completely abol-

ish forms of action. Section 4437 declares that "all contracts may be sued on in the same form of action," and section 4438, dealing with the general subject of torts, provides that "all wrongs and injuries to the property, in which money only is demanded as damages, may be redressed by an action on the facts of the case." No valid reason could be offered to support an interpretation which would give to the words "actions for injuries to personal or real property," in section 4470, a meaning more restricted than the sense in which the words "all wrongs and injuries to the property" are used in section 4438. It is hardly to be doubted on any substantial ground that the legislative purpose in both sections was to include and provide for every species of injury to personal property included in the more general or collective name of torts or civil wrongs. The new remedy provided by congress must be enforced just as like actions within the same jurisdiction (Campbell v. City of Haverhill; Cockrill v. Butler), in accord with Rev. St. § 914. The actions are, therefore, prosecuted according to Shannon's Code Tenn. § 4438, as actions "on the facts of the case"; and, agreeably to Rev. St. § 721, as expounded in the cases last cited (also, Brady v. Daly), the state statute of limitations furnishes the rule of decision.

Having regard to the real nature and purpose of the actions, I conclude that they are suits for an injury to personal property, and within section 4470 of the state statute of limitations prescribing a period of three years as a bar to such suits. It follows, of course, that section 4469 is inapplicable. Accordingly, the demurrer as to the second plea is sustained, and as to the third plea overruled.