# WHITMAN *v.* OXFORD NATIONAL BANK.

176  559<br>1176  641

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 27. Argued March 8, 9, 1899. — Decided March 5, 1900.

The liability imposed upon stockholders in corporations by the provision in the constitution of the State of Kansas that "dues from corporations shall be secured by individual liability of the stockholders to an additional amount equal to the stock owned by each stockholder, and such other means as shall be provided by law; but such individual liabilities shall not apply to railroad corporations, nor corporations for religious or charitable purposes" and by the statutes of that State which are referred to in the opinion of the court in this case, though statutory in origin, is contractual in its nature; and an action on this liability, not being one to enforce a penal statute of Kansas, but only to secure a private remedy, can be maintained in any court of competent jurisdiction, whether Federal or state.

THIS was an action brought in the Circuit Court of the United States for the Southern District of New York, by the National Bank of Oxford, a national banking association, incorporated and established under the laws of the United States, and doing business at Oxford in the State of Pennsylvania, against George L. Whitman, a citizen of the State of New York, asserting his liability, under the provisions of the constitution and laws of the State of Kansas, for a debt of more than $2000 due to the plaintiff from the Arkansas City Investment Company, a corporation of the State of Kansas, in which the defendant was a stockholder.

The constitution of the State of Kansas of 1859 provided, in article 12, section 2, as follows:

" Dues from corporations shall be secured by individual liability of the stockholders to an additional amount equal to the stock owned by each stockholder; and such other means as shall be provided by law; but such individual liabilities shall not apply to railroad corporations, nor corporations for religious or charitable purposes."

The General Statutes of 1868 of that State, chapter 23, contained the following provisions:

" SEC. 32. If any execution shall have been issued against the property or effects of a corporation, except a railway or a religious or charitable corporation, and there cannot be found any property whereon to levy such execution, then execution may be issued against any of the stockholders, to an extent equal in amount to the amount of stock by him or her owned, together with any amount unpaid thereon; but no execution shall issue against any stockholder, except upon an order of the court in which the action, suit or other proceeding shall have been brought or instituted, made upon motion in open court, after reasonable notice in writing to the person or persons sought to be charged; and, upon such motion, such court may order execution to issue accordingly; or the plaintiff in the execution may proceed by action to charge the stockholders with the amount of his judgment."

" SEC. 40 (as amended in 1883). Laws 1883, c. 46, p. 88. A corporation is dissolved — first, by the expiration of the time limited in its charter; second, by a judgment of dissolution rendered by a court of competent jurisdiction.; but any such corporation shall be deemed to be dissolved for the purpose of enabling any creditors of such corporation to prosecute suits against the stockholders thereof to enforce their individual liability, if it be shown that such corporation has suspended business for more than one year, or that any corporation now so suspended from business shall for three months after the passage of this act fail to resume its usual and ordinary business."

" SEC. 44. If any corporation, created under this or any general statute of this State, except railway or charitable or relig-

ious corporations, be dissolved, leaving debts unpaid, suits may be brought against any person or persons who were stockholders at the time of such dissolution, without joining the corporation in such suit; and if judgment be rendered, and execution satisfied, the defendant or defendants may sue all who were stockholders at the time of dissolution, for the recovery of the portion of such debt for which they were liable, and the execution upon the judgment shall direct the collection to be made from property of each stockholder, respectively; and if any number of stockholders (defendants in the case) shall not have property enough to satisfy his or their portion of the execution, then the amount of deficiency shall be divided equally among all the remaining stockholders, and collections made accordingly, deducting from the amount a sum in proportion to the amount of stock owned by the plaintiff at the time the company dissolved."

The complaint alleged, and the plaintiff at the trial introduced evidence of, the following facts: The Kansas corporation was duly formed under the general laws of the State of Kansas in 1886, for the purpose of a general banking and real estate business; had its only place of business at Arkansas City in that State; was not a railway, religious or charitable corporation; and had a capital of $200,000, divided into 2000 shares of $100 each, of which the defendant, from the time of the formation of the corporation, and ever after, owned one half. In December, 1890, that corporation made a general assignment for the benefit of its creditors, and from that time wholly suspended business. About four months before its failure, it indorsed and guaranteed for value two promissory notes, together amounting to $4875, which were discounted by the plaintiff. In 1895 the plaintiff brought an action to recover the unpaid balance of those notes, in a district court of the county of Cowley and State of Kansas, against the corporation, and, after its general appearance and subsequent default, recovered judgment against it for the sum of $3449; an execution thereon against the corporation was issued to the sheriff of the county, who returned it wholly unsatisfied, because he could not find any property on which to make a

levy; and the corporation had in fact no assets of any kind.

The defendant moved the Circuit Court of the United States to direct a verdict in his favor, upon the ground that it had no jurisdiction to enforce a statutory remedy of the State of Kansas. The court denied the motion, directed a verdict for the plaintiff, overruled a motion for a new trial, and entered a final judgment for the plaintiff. 76 Fed. Rep. 697. That judgment was affirmed by the Circuit Court of Appeals. 51 U. S. App. 536. The defendant thereupon applied for and obtained this writ of certiorari. 168 U. S. 710.

*Mr. William G. Choate* for Whitman. *Mr. Joseph H. Choate* and *Mr. William G. Wilson* were on his brief.

*Mr. William B. Hornblower* and *Mr. Howard A. Taylor* for the Oxford Bank.

Mr. Justice Brewer, after stating the case, delivered the opinion of the court.

By section 1 of Article 12 of the constitution of Kansas a certain definite liability is cast upon each stockholder in other than railway, religious and charitable corporations. This liability is for the dues of the corporation and to an amount equal to the stock owned by him. The word "dues" is one of general significance, and includes all contractual obligations. Whether broad enough to include liabilities for torts, either before or after judgment, is not a question before us, and upon it we express no opinion. The words, "shall be secured," are not merely directory to the legislature to make provision for such liability, but of themselves declare it. To this extent the constitution is self-executing. *Willis* v. *Mabon*, 48 Minnesota, 140. The discretion of the legislature extends beyond this, as indicated by the clause "and such other means as shall be provided by law." A failure of the legislature to create courts or prescribe modes of procedure may, it is true, make ineffective this constitutional provision, but does not destroy the liability; nor is it created by the act of the legislature

prescribing the mode of its enforcement. This is the obvious meaning of the constitutional provision. "The simplest and most obvious interpretation of a constitution, if in itself sensible, is the most likely to be that meant by the people in its adoption." Lamar, Justice, in *Lake County* v. *Rollins*, 130 U. S. 662, 671.

But this constitutional provision does not stand alone. The legislature of Kansas has acted on the subject-matter, and the constitution and the statutes are to be taken together, as making one body of law; and it serves no good purpose to inquire what rights and remedies a creditor of a corporation might have or what liabilities would rest upon a stockholder if either constitution or statutes stood alone and unaided by the other.

In section 32 of chapter 23 of the General Statutes of that State, passed before the organization of the corporation referred to, the legislature prescribed the mode of enforcing this constitutional liability, and if such were needed declared to what extent it could be enforced. It may be either by motion in a case in which judgment has been rendered against the corporation and execution thereon returned unsatisfied, or by a direct action by the plaintiff in such judgment. Neither remedy can be made effectual in the courts of Kansas against a stockholder unless by due service of process he is brought within the jurisdiction of such courts. *Wilson* v. *Seligman*, 144 U. S. 41 ; *Howell* v. *Manglesdorf*, 33 Kansas, 194, 199.

Whatever else may be said about the remedy it is direct, certain and available to every creditor of a corporation, and leaves to the stockholders the adjustment between themselves of their respective individual shares of the corporate obligations. In view of the present tendency to carry on business through corporate instrumentalities and the freedom from personal liability which attends ordinary corporate action, it cannot be said that this limited additional remedy is open to judicial condemnation.

The liability which by the constitution and statutes is thus declared to rest upon the stockholder, though statutory in its origin, is contractual in its nature. It would not be doubted that if the stockholders in this corporation had formed a part-

nership, the obligations of each partner to the others and to creditors would be contractual, and determined by the general common law in respect to partnerships. If Kansas had provided for partnerships, with limited liability, and these parties, complying with the provisions of the statute, had formed such a partnership, it would also be true that their obligations to one another and to creditors would be contractual, although only in the statute was to be found the authority for the creation of such obligations. And it is none the less so when these same stockholders organized a corporation under a law of Kansas, which prescribed the nature of the obligations which each thereby assumed to the others and to the creditors. While the statute of Kansas permitted the forming of the corporation under certain conditions, the action of these parties was purely voluntary. In other words, they entered into a contract authorized by statute.

*Flash* v. *Conn*, 109 U. S. 371, is much in point. In that case a corporation was organized in the State of New York, under an act of legislature, which contained this provision:

"Sec. 10. All the stockholders of every company incorporated under this act shall be severally individually liable to the creditors of the company in which they are stockholders, to an amount equal to the amount of stock held by them respectively, for all debts and contracts made by such company, until the whole amount of capital stock fixed and limited by such company shall have been paid in, and a certificate thereof shall have been made and recorded as prescribed in the following section."

An action was brought in Florida against one of the stockholders, and on error to this court it was held that the stockholder was liable, the court saying (p. 377):

"We think the liability imposed by section 10 is a liability arising upon contract. The stockholders of the company are by that section made severally and individually liable, within certain limits, to the creditors of the company for its debts and contracts. Every one who becomes a member of the company by subscribing to its stock assumes this liability, which continues until the capital stock is all paid up and a certificate of that fact is made, published and recorded."

And again, after noticing the rulings of the Court of Appeals of the State of New York (p. 379):

"If this were a case arising in the State of New York we should therefore follow the construction put upon the statute by the courts of that State. The circumstance that the case comes here from the State of Florida should not leave the statute open to a different construction. It would be an anomaly for this court to put one interpretation on the statute in a case arising in New York, and a different interpretation in a case arising in Florida. Our conclusion, therefore, is that this action was not brought to enforce a liability in the nature of a penalty.

"The right of the plaintiffs to sue upon this liability in any court having jurisdiction of the subject-matter and the parties is, therefore, clear. *Dennick* v. *Railroad Co.*, 103 U. S. 11."

And finally, in reference to the objection that the action was one at law against a single stockholder instead of in equity against all (p. 380):

"But in this case the statute makes every stockholder individually liable for the debts of the company for an amount equal to the amount of his stock. This liability is fixed, and does not depend on the liability of other stockholders. There is no necessity for bringing in other stockholders or creditors. Any creditor who has recovered judgment against the company and sued out an execution thereon, which has been returned unsatisfied, may sue any stockholder, and no other creditor can. Such actions are maintained without objection in the courts of New York, under section 10 of the statute relied on in this case. *Shillington* v. *Howland*, 53 N. Y. 371; *Weeks* v. *Suydam*, 64 N. Y. 173; *Handy* v. *Draper*, 89 N. Y. 334; *Rocky Mountain Nat. Bank* v. *Bliss*, 89 N. Y. 338."

In *Richmond* v. *Irons*, 121 U. S. 27, in which the question presented was whether the individual liability of a stockholder in a national bank survived as against his administrator, it was said (p. 55):

"Under that act the individual liability of the stockholders is an essential element in the contract by which the stockholders became members of the corporation. It is voluntarily

entered into by subscribing for and accepting shares of stock. Its obligation becomes a part of every contract, debt and engagement of the bank itself, as much so as if they were made directly by the stockholder instead of by the corporation. There is nothing in the statute to indicate that the obligation arising under these undertakings and promises should not have the same force and effect, and be as binding in all respects, as any other contracts of the individual stockholder."

In *Concord First National Bank* v. *Hawkins*, 174 U. S. 364, 372, in which one national bank was sought to be charged as stockholder in another national bank, was this declaration:

"In the present case it is sought to escape the force of these decisions by the contention that the liability of the stockholder in a national bank to respond to an assessment in case of insolvency is not contractual, but statutory."

"Undoubtedly, the obligation is declared by the statute to attach to the ownership of the stock, and in that sense may be said to be statutory. But as the ownership of the stock, in most cases, arises from the voluntary act of the stockholder, he must be regarded as having agreed or contracted to be subject to the obligation."

Similar are the views entertained by the Supreme Court of Kansas.

In *Abbey* v. *Dry Goods Co.*, 44 Kansas, 415, 418, we find this statement:

"The nature of this liability is peculiar; it seems to have been created for the exclusive benefit of corporate creditors; the liability rests upon the stockholders of a corporation to respond to the creditors, for an amount equal to the stock held by each, and it has been held that the action to enforce this liability can only be maintained by the creditors themselves, in their own right and for their own benefit."

And again, in *Plumb* v. *Bank of Enterprise*, 48 Kansas, 484, 486:

"Under our constitution and statutes, the individual liability stands as a sort of surety for the corporate liability, and creditors of the corporation are supposed to contract with reference to the individual responsibility of the stockholders."

In *Achenbach* v. *Pomeroy Coal Co.*, 2 Kansas Ct. App. 357, 359, is this language:

"The liability of a stockholder in an insolvent corporation is of the nature of a liability on contract, and survives against the legal representatives of a deceased stockholder."

And while the word "statutory" is sometimes found in the opinions of that court as descriptive of the stockholder's liability, evidently the word is so used to indicate the origin rather than the nature of the liability. Thus, in *Howell* v. *Manglesdorf*, 33 Kansas, 194, it was said (p. 199):

"While the liability is statutory, it is one which arises upon the contract of subscription to the capital stock of the corporation, and an action to enforce the same is transitory, and may be brought in any court of general jurisdiction in the State where personal service can be made upon the stockholder."

Obviously this recognizes the contractual nature of the obligation as well as its statutory origin. Again, in *Pierce* v. *Security Company*, 60 Kansas, 164, it was held that a stockholder, sued by a judgment creditor of the corporation, might set off against that claim the indebtedness of the corporation to him, accruing before he became liable as stockholder, the court saying (p. 166):

"Where the statute creates a liability against stockholders which is personal and several, and actionable by any creditor against any stockholder, it is generally held that a stockholder may in such a proceeding brought against himself set off debts due to him from the company."

Thus, while the statutory origin of the obligation is asserted, its contractual nature is recognized in that the right of set-off is affirmed.

That an action upon this liability is not one to enforce a penal statute of Kansas but only to secure a private remedy is not open to question since the decision in *Huntington* v. *Attrill*, 146 U. S. 657.

And as this liability is one which is contractual in its nature, it is also clear that an action therefor can be maintained in any court of competent jurisdiction. *Dennick* v. *Railroad Company*, 103 U. S. 11; *Huntington* v. *Attrill*, 146 U. S. 657.

Similar views have been expressed by the highest courts of several States in like actions based upon the same Kansas constitutional and statutory provisions. . *Ferguson* v. *Sherman*, 116 California, 169 ; *Bell* v. *Farwell*, 176 Illinois, 489 ; *Hancock National Bank* v. *Ellis*, 172 Mass. 39 ; *Western National Bank* v. *Lawrence*, 117 Michigan, 669 ; *Guerney* v. *Moore*, 131 Missouri, 650.   See also *Paine* v. *Stewart*, 33 Connecticut, 516 ; *Cushing* v. *Perot*, 175 Penn. St. 66 ; *Rhodes* v. *United States National Bank*, (U. S. Ct. Ap. 7th Cir.) 24 U. S. App. 607 ; *Bank of North America* v. *Rindge*, (U. S. Cir. Ct. S. Dist. Cal.) 57 Fed. Rep. 279 ; *McVickar* v. *Jones*, (Cir. Ct. Dist. N. H.) 70 Fed. Rep. 754 ; *Mechanics' Savings Bank* v. *Fidelity Insurance Company*, (Cir. Ct. E. Dist. Penn.) 87 Fed. Rep. 113 ; *Dexter* v. *Edmands*, (Cir. Ct. Mass.) 89 Fed. Rep. 467 ; *Brown* v. *Trail*, (Cir. Ct. Dist. Md.) 89 Fed. Rep. 641.

We see no error in the judgment of the Circuit Court of Appeals, and it is, therefore,                      *Affirmed.*

Mr. Justice Peckham dissented.