WARD v. JOSLIN.

(Circuit Court of Appeals, First Circuit. December 6, 1900.)

No. 340.

1. CORPORATIONS—POWER TO MAKE GUARANTY—KANSAS STATUTES.

There is nothing in the statutes or decisions of Kansas, with reference to loan and trust companies organized under Comp. Laws 1885, c. 23, which changes, as to such companies, the general rule that a corporation cannot guaranty a liability unless it is created in the ordinary course of its business, or brings a guaranty by such a company within that rule, unless the company received the proceeds of the paper guarantied.

2. SAME—STOCKHOLDERS' LIABILITY—KANSAS STATUTES.

The provision of Comp. Laws Kan. 1885, c. 23, § 32, which authorizes a judgment creditor of a corporation, when execution has been returned unsatisfied, to proceed by action to charge the stockholders with the amount of his judgment, must be construed in connection with the further provision of the same act (section 44), which makes stockholders liable for "debts unpaid" of the corporation, and the provision of the state constitution .(article 12, § 2), for the enforcement of which the statute was enacted, and which secures "dues" from corporations by an additional stockholders' liability; and judgment creditors of a corporation can maintain actions to charge stockholders for the amounts of their judgments. only where such judgments are for "debts" or "dues" of the corporation.

3. SAME—CONSTRUCTION OF CONSTITUTION—"DUES" OF CORPORATIONS.

The word "dues," as used in Const. Kan. art. 12, § 2, which provides that "dues from corporations" shall be secured by individual liability of the stockholders, is a comprehensive term, which includes all contractual liabilities of the corporation; but, under the rule of equitable construction applicable to constitutional provisions, such term cannot be construed, as against a stockholder, to include a contract which was ultra vires, although, under the local rule, the corporation itself may be estopped, by receiving the benefit of the contract, from pleading in defense to an action thereon.

4. SAME—ACTION AGAINST STOCKHOLDER—CONCLUSIVENESS OF JUDGMENT AGAINST CORPORATION.

Under the law of Kansas, as established by decisions that a corporation which has received the benefit of a contract is estopped to contest it on the ground that it was ultra vires, a judgment against a corporation is not conclusive upon a stockholder in an action to charge him with individual liability in such sense as to preclude him from showing the nature of the original claim, and that the contract sued on was ultra vires, and hence not of the class for which he is liable.

5. APPEAL—QUESTIONS NOT PRESENTED TO LOWER COURT—MOTION FOR NEW TRIAL.

A motion for new trial, offering further proof on a material matter, will not induce an appellate court to reverse the judgment to enable the trial court to take further proceedings, where the record does not show that the motion was acted on by the trial court, or brought to its attention.

In Error to the Circuit Court of the United States for the District of New Hampshire.

William Reed Bigelow (E. L. Waterman and Pulsifer & Alexander, on the brief), for plaintiff in error.

John S. H. Frink (Hiram Blake, on the brief), for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and BROWN, District Judge.

PUTNAM, Circuit Judge. This suit was brought by a creditor of a Kansas corporation, known as the "Western Investment Loan & Trust Company," organized on February 25, 1888, against a stockholder in that corporation, for a claim against it which had gone into judgment and remains unsatisfied. The case was tried in the circuit court by the presiding judge, a jury having been duly waived according to the statute. Among other findings of the court appears the following:

"I find as matter of fact, upon the evidence contained in the record and upon the arguments, that Ward's claim against the trust company was upon a guaranty, given upon a valuable consideration, of the payment of certain promissory notes from one third party to another, and was not a guaranty of the payment of securities negotiated by the company."

The judgment below was for the defendant. 100 Fed. 676. Thereupon the plaintiff took out this writ of error. Therefore we will describe the parties merely as plaintiff and defendant.

The underlying provision with reference to the liability of stockholders in Kansas corporations is found in Const. art. 12, § 2, as follows:

"Dues from corporations shall be secured by individual liability of the stockholders to an additional amount equal to the stock owned by each stockholder; and such other means as shall be provided by law; but such individual liabilities shall not apply to railroad corporations, nor corporations for religious or charitable purposes."

The finding of the court below, which we have cited, uses "guaranty" in the singular, but there were several guaranties, all of the same tenor, given at the same time, and bearing date of May 9, 1889. At that time the General Statutes of Kansas of 1889 had not come into force, and we look for the law to the Compiled Laws of Kansas of 1885. Chapter 23, § 5, enacts for what purposes corporations may be formed, with the rest the following:

"Thirty-eighth. The organization of loan and trust companies: provided, that nothing in this act shall be construed to authorize such loan and trust companies to sell real estate held as security, except in the manner provided by law.

"Thirty-ninth. The accumulation and loan of funds, the erection of buildings, and the purchase and sale of real estate for the benefit of its members."

Section 11, among other powers of corporations, grants the following:

"Sixth, to make by-laws, not inconsistent with existing laws, for the management of its property, the regulation of its affairs, and for the transfer of its stock. Seventh, to enter into any obligation or contract essential to the transaction of its ordinary affairs."

The statute speaks of the "charter," which, after all, is merely the articles of association, as the statutes provide for incorporation by such articles, and for no other method. The corporation in this case was thus organized. The articles enumerate the purposes for which the corporation was formed, and, with the rest, "to transact the business of a loan and trust company." The by-laws create a loan committee with certain powers, but the power of guarantying is not expressed. The court below found that the directors had au-

thorized the president and secretary to guaranty the payment of securities negotiated by the company, but there seems to have been no by-law on the topic. There is nothing in the statutes of Kansas, nor in the decisions of its courts, defining the powers of a "loan and trust" company; neither has there been cited any other statute or decision defining the powers of corporations of that character.

Banking corporations are authorized by the laws of Kansas. They are empowered to buy and sell exchange, and to discount negotiable paper. Nowhere is any express permission given them to rediscount their own notes, or to sell them, or to give any guaranty, and, in these respects, banking corporations and "loan and trust" companies stand on the same footing. There is nothing in the statutes expressly vesting either power in either.

In this condition of legislation, Commercial Bank v. Cheshire Provident Inst., 59 Kan. 361, 53 Pac. 131 (decided in 1898), with reference to a banking corporation, said (at page 364, 59 Kan., and page 132, 53 Pac.):

"The record before us does not contain any of the evidence offered at the trial. The general finding resolves all doubt as to the facts against the plaintiff in error. We must therefore presume that the guaranty was executed for a valuable consideration, by the duly-authorized officers of the bank, and in due course of business. The claim that a banking institution dealing in commercial paper is without authority to bind itself by a guaranty thereof has nothing to commend it to especial favor. It is true that in this case the paper itself does not indicate that the Commercial Bank ever owned it. Nevertheless it may have received the proceeds, and the guaranty may have been made strictly in the interest of the bank."

The judgment of the court below, holding the bank liable on its guaranty of a certain promissory note, was affirmed; but it is necessary to distinguish this case from that at bar in one particular. It appears, at page 362, 59 Kan., and page 131, 53 Pac., that the parties went to trial on the facts without regard to the pleadings, and the general finding, referred to at page 364, 59 Kan., and page 132, 53 Pac., imported into the record enough to sustain the judgment on appeal.

The result is that it cannot be determined that there is anything in the laws of Kansas, with reference to "loan and trust" companies, which infringes the general rule that a corporation cannot guaranty a liability unless it is created in the ordinary course of its business, and nothing to show that a guaranty by a "loan and trust" company of any paper is thus created, unless, to use the language of Commercial Bank v. Cheshire Provident Inst., it received the proceeds of the paper which it guarantied. This is within the common rule that banking institutions may guaranty paper owned by them when they negotiate it, as several times stated by the supreme court. In the absence of any statutes or judicial decisions in reference thereto, there seems to be no escape from the proposition that what were the powers of this corporation with reference to the guaranties on which the judgment against it was rendered was, within the limitations of this case, a question of local usage, and therefore of fact, to be determined by the court below. Within this observation falls the question whether or not there were any by-laws which extended

the powers of the corporation to the execution of these guaranties. The court below does not follow the express language of its opinion that the guaranties were ultra vires, when it comes to state its findings, but it must be taken to have made an equivalent finding, because it said that they were not "within the reasonable and proper scope of the business as contemplated by the parties."

Only disjointed provisions are found in the Compiled Laws of Kansas of 1885, fixing the liability of stockholders. Chapter 23 provides, in section 44, that, on dissolution,. suits may be brought against stockholders for "debts unpaid"; and section 46 reads as follows: "No stockholder shall be liable to pay debts of a corporation, beyond the amount due on his stock, and an additional amount equal to the stock owned by him." Section 32 enacts generally that when an execution has been issued against a corporation, and property cannot be found on which to levy it, execution may go against any of the stockholders, "or the plaintiff in the execution may proceed by action to charge the stockholders with the amount of his judgment."

The plaintiff claims that, by virtue of the last provision, his right against a stockholder was perfect whenever he had an execution against the corporation, no matter from what the judgment against it arose; and in support thereof he cites Grund v. Tucker, 5 Kan. 70. That suit was based on an act of 1863, and some expressions in the opinion would seem to sustain the plaintiff's proposition. Nevertheless, the opinion as a whole does not support him, but it relies on the provision of the act of 1863, to the effect that stockholders are liable for "all debts and responsibilities of the corporation." The court observes that a judgment creates a responsibility, which cannot be contravened. This peculiar expression disappeared from subsequent revisions. In view of the rule that statutes are to be construed in pari materia, section 32 must be restricted to cases where the stockholder's liability is elsewhere established, by either the constitution or the statutes, and these are limited to "debts unpaid" and "dues," and it cannot justly be claimed that "debts unpaid" is a broader expression than "dues."

It is maintained by the defendant that even the word "dues,". as used in the constitution, has a narrow construction. This is erroneous. In Whitman v. Bank, 176 U. S. 559, 562, 20 Sup. Ct. 477, 44 L. Ed. 587, the opinion states that it includes all contractual obligations. We refer, also, to Bouv. Law Dict. "Due," showing that the word may signify "what ought to be paid,—what may be demanded"; and to Judge Story's observation in Carver v. Manufacturing Co., 2 Story, 432, 449, Fed. Cas. No. 2,485, on the words "debts" and "dues," that "dues" is broader than "debts."

The only decisions of the courts in Kansas which we have found bearing in any way on this case are the following:

In Railroad Co. v. Fletcher, 35 Kan. 236, 10 Pac. 596 (decided in 1886), the court held that, if the Atchison Company had authority under any circumstances to guaranty bonds, the guaranty of the particular bonds then in issue would be binding in the hands of parties purchasing them in good faith and without notice; but, on

the pleadings in the original suit in the case at bar, the present plaintiff had notice, because the guaranties of the corporation were a part of the transaction of his obtaining the notes. In Town Co. v. Morris, 43 Kan. 282, 284, 23 Pac. 569 (decided in 1890), the court laid down the following broad rule:

"While an executory contract made by a corporation without authority cannot be enforced, yet where the contract has been executed, and the corporation has received the benefit of it, the law interposes an estoppel, and will not permit the validity of the contract to be questioned."

This was a suit, not for the value of the stock of merchandise in question, but for its agreed purchase money. This was allowed to be recovered, notwithstanding the defense of ultra vires. The case is referred to in Railroad Co. v. Johnson, 58 Kan. 175, 183, 48 Pac. 847, decided in 1897, and the opinion repeats what we have quoted. Although this rule is not accepted by the supreme court, which holds that ordinarily, in cases of contracts ultra vires, nothing can be recovered except on a quantum meruit, yet it touches, in this suit, a local question, to be determined by local decisions.

The next question is not whether the judgment against the corporation can be impeached, but whether it can be examined for the purpose of showing the nature of the original claim, and thus for the purpose of ascertaining whether the claim was of the class for which stockholders are liable. In suits brought by judgment creditors to set aside alleged fraudulent conveyances, this is permitted. Bump, Fraud. Conv. (3d Ed.) 576; Wait, Fraud. Conv. (3d Ed.) § 270. Of course, with reference to that class of suits, there is often a doubt as to the extent to which the examination may be made; for example, whether or not the statute of limitations can be set up, although not relied on in the original suit. This, however, concerns only the application of the rule, and does not render its existence doubtful. Its underlying reasons reach suits against stockholders. They are so applied in Cook, Stock, Stockh. & Corp. Law (4th Ed.) § 224, where it is said, in substance, that the judgment is conclusive as to the amount and validity of the creditor's claim, but that it may be shown that the claim comes within some class for which stockholders are not liable.

The supreme court has, at various times, spoken of the conclusiveness of judgments against corporations in suits to enforce the liability of stockholders; and it has used very decisive language sustaining that conclusiveness, especially in proceedings under the Kansas constitution. Bank v. Farnum, 176 U. S. 640, 643, 644, 20 Sup. Ct. 506, 44 L. Ed. 619. No case, however, has come before that court where it has had occasion to lay down more than the general rule to which we have referred; so that it has never passed on the question how far the original judgment may be opened, if at all, for the purpose of showing that the claim was not one of the class for which the stockholder is liable. More especially has it never passed on the question whether or not it is open to a stockholder to show that the contract on which a judgment against a corporation was obtained was incurred ultra vires, and that, therefore, the judgment is not enforceable against him.

This defense would seem not to be open to a stockholder in jurisdictions or with reference to judgments where the rule of the supreme court applies, that ultra vires is a complete defense in the original action on a contract which is itself ultra vires; because, in such cases, the question is not whether there are two classes of liabilities, one for which the stockholder is liable and one for which he is not, but whether there is any liability at all on the part of the corporation. But in Kansas we have seen that ultra vires is not always a defense to a suit on a contract, and this, not on the ground that the contract was originally valid, but on that of estoppel. Therefore, under the circumstances, the question is not whether this original judgment is valid, but whether it was for a claim of a class for which stockholders are liable; in other words, whether the stockholders can be holden for an ultra vires contract merely because the corporation is estopped from contesting it.

Not only has the circuit court found that the guaranties sued were ultra vires, but the question of ultra vires arises on the face of the judgment against the corporation. We have, on the face of the declaration, claims for purely independent guaranties, made by a corporation on securities not negotiated by it, supplemented by such findings by the circuit court as preclude the possibility that there were any facts, as, for example, by-laws not pleaded, or any other facts not disclosed by the declaration, which could relieve the nature of the transaction.

In this connection, it should be observed that the plaintiff refers to certain cases by virtue of which he maintains that there is a presumption that the guaranties were within the powers of the corporation, and of its officers who executed them. These, however, only sustain the rule stated in Southern Exp. Co. v. Western N. C. R. Co., 99 U. S. 191, 199, 25 L. Ed. 319, and concern merely the question of presumption, and the necessity of offering proof before a defense is made. They have no relation to a conclusive presumption, nor any pertinency when the true facts of the case are reached, as they are at bar.

This brings us to the crucial question in the case; that is, whether the Kansas constitution and statutes reach that which is created only by estoppel, connected with and arising out of ultra vires acts of a corporation. It is well settled that, while the liability of stockholders is in one sense statutory, yet it is contractual in its nature. This was stated in Bank v. Hawkins, 174 U. S. 364, 19 Sup. Ct. 739, 43 L. Ed. 1007, and restated in Whitman v. Bank, 176 U. S. 559, 20 Sup. Ct. 477, 44 L. Ed. 587, and in Bank v. Farnum, 176 U. S. 640, 20 Sup. Ct. 506, 44 L. Ed. 619. The general rule is that, so long as a matter continues executory in any part, ultra vires is a defense through to the end. It has also been stated by the supreme court, and reiterated in Bank v. Hawkins, at page 371, 174 U. S., page 742, 19 Sup. Ct., page 1011, 43 L. Ed., that one ground on which the doctrine of ultra vires rests is "the interest of the stockholders not to be subject to risks which they have never undertaken." To reject in the case at bar the defense of ultra vires, set up by a stockholder, is to shut our eyes to this underlying equity.

Inasmuch as constitutional provisions are to be construed in an equitable manner and for broad purposes, it was well urged by the circuit court that an ultra vires guaranty is not within the equity of the article of the Kansas constitution holding stockholders liable for the dues of corporations. We have already seen that the word "dues" is not limited to debts, but includes all contractual obligations, and this, of course, covers guaranties and other contingent liabilities. We have also already seen that it may be broad enough to cover "what ought to be paid; what may be demanded." Whether in the Kansas constitution it covers anything except "contractual obligations" was left undetermined in Whitman v. Bank, 176 U. S. 559, 562, 20 Sup. Ct. 477, 44 L. Ed. 587. Of course, if the word "dues" must always be construed to cover everything which "ought to be paid" or which "may be demanded," it would cover everything which arises by estoppel; but, in view of the equities to which we have referred, especially the underlying equity of the doctrine of ultra vires stated by the supreme court, it ought not to have the effect of holding a stockholder for what is ultra vires in all cases where the corporation may be holden therefor by estoppel. It is necessary to express this carefully, because matters may arise from estoppel which are justly and properly "dues" in any fair sense of the word, but where the doctrine of ultra vires applies there is no true liability. Whatever liability there may be, according to the laws of Kansas, arises from a fiction which estops the corporation from denying that there are dues, even though there were none in truth. A declaration stating the facts would be, in substance, that the corporation had assumed to enter into a contract which was ultra vires, and that there was no contract, but that, the transaction having been on one part executed, the corporation is estopped from asserting the truth. Now, fictions of law are not allowed to be used to the extent of doing substantial injustice, and especially such fictions have no place in the proper construction of constitutional provisions. In regard to such, the functions of a judge are "to ascertain the spirit of the fundamental law, and so to carry it out as to avoid a sacrifice of those interests which it is designed to protect." Sedg. St. & Const. Law (2d Ed.) 417. On the whole, the reasonable and equitable construction of the Kansas constitutional provision applicable here is that it does not reach what, in fact, were not liabilities of a corporation, and are held to be such only because the corporation was estopped from setting up the truth in reference to them.

In reaching these conclusions, we have not found it necessary to refer to Schrader v. Bank, 133 U. S. 67, 10 Sup. Ct. 238, 33 L. Ed. 564, relied on by the defendant, because its application to this case is questionable. Neither have we found it necessary to refer to the rule so often stated, to the effect that enactments imposing liabilities on officers and stockholders are to be strictly construed, in connection with the rule in Kansas that this insistence of the common law shall not be applicable to any general statutes. Gen. St. 1889, par. 7281. We have only endeavored, in ascertaining what is the effect of the constitution and laws of Kansas, to seek a just and reasonable interpretation.

A single point remains to be considered. It appears that the plaintiff made a motion for a new trial, offering proof to show that the notes guarantied by the corporation were, in fact, its notes, and were negotiated by it at the time the guaranties were made, and that their nominal owner held them as its trustee. We do not perceive that any action was taken on this motion, and the record does not show that it was brought to the attention of the court. Whether or not the suggestion which it contains affords an opportunity for the plaintiff to seek further remedy is, perhaps, not before us. There seems to be no doubt that, in a plain case of injustice, an appellate tribunal may reverse the judgment of the court below, to enable it to take further proceedings, for the purpose of working out the real rights of the parties, although this is rarely done. Estho v. Lear, 7 Pet. 130, 8 L. Ed. 632; Ballard v. Searls, 130 U. S. 50, 9 Sup. Ct. 418, 32 L. Ed. 846; In re Gamewell Co., 20 C. C. A. 111, 73 Fed. 908, 912, decided by this court. The record here does not authorize such relief. If the plaintiff has any remedy in connection with this new matter, it is for him to consider whether it could be obtained by asking of this court leave to file in the circuit court an application in review of the proceedings. In re Gamewell Co., supra. Inasmuch as the new matter which the plaintiff offered apparently contradicts the legal intendment of the declaration in the suit against the corporation, as we have already said, it may be especially doubtful whether, in any event, he could have any remedy in any direction.

The judgment of the circuit court is affirmed, with costs to defendant in error.