LITTLE v. KOHN.

(Circuit Court, E. D. Pennsylvania. February 3, 1911.)

(No. 46, April Session, 1906.)

LIMITATION OF ACTIONS (§ 28*)—STOCKHOLDER'S LIABILITY—NATURE—LIMITATIONS—"SPECIALTY."

Pennsylvania Act 1713 (1 Smith's Laws, p. 76) provides that all actions of debt grounded on any contract without specialty shall be commenced and sued within the time and limitation expressed, and not after, and then declares that such actions for debt must be brought within six years next after the cause of action accrued. *Held*, that a cause of action to enforce a stockholder's statutory liability for corporate debts after insolvency was based on an implied contract pursuant to the statute without a specialty, and was therefore barred under such act within six years after it accrued.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 134, 135; Dec. Dig. § 28.*]

Action by Jane Little, to the use, etc., against Arnold Kohn. Judgment for defendant.

Duane, Morris & Heckscher, for plaintiff.
Fox & Rothschild, for defendant.

J. B. McPHERSON, District Judge. The defendant was a stockholder in a Kansas corporation, the Lombard Investment Company, and is now sued upon the double liability created by the Constitution and laws of that state. One of his defenses is the Pennsylvania statute of limitation, passed in 1713 (1 Smith's Laws, p. 76), to which the plaintiff replies that the statute does not cover the case, and that nothing can bar the suit except the presumption of payment, which has not yet arisen. A very complete history of the company's affairs is given by Judge Van Devanter in the course of an interesting opinion delivered in the Court of Appeals for the Eighth Circuit. Anglo-American, etc., Co. v. Lombard, 132 Fed. 721, 68 C. C. A. 89.

The facts now relevant are as follows: Before August 1, 1890, Jane Little owned several of the company's debenture bonds. These fell due July 1, 1896, and a few months afterwards she transferred them to Frederick Ramsden, for whose use the suit is brought. On August 1, 1890, the company practically ceased business, being then insolvent, and as a result the Kansas statutes in force at that time empowered any creditor to sue any stockholder at the end of one year thereafter. The present suit was brought June 19, 1906. This right to sue was personal and transitory, and therefore might be exercised in any court having jurisdiction of the stockholder. If the defendant had

resided in Kansas, or had been sued there, the state limitation of three years would have applied. This is conceded by the plaintiff, and, indeed, could not be successfully denied. But the defendant has never been a resident of Kansas, and he concedes, in turn, that (for the immediate purpose) he is not protected by the Kansas limitation, conceding, also, that, as the right of action is transitory, this court may entertain the suit. We start, then, with the undisputed proposition that the first question affecting the rights of the parties is to be determined by the law of Pennsylvania, either the statute law on the subject of limitation, or the common law concerning the presumption of payment.

What, then, is the applicable statute, if any is to be found? Two acts are relied on by the defendant, the act of 1713 and the act of 1867. For the present, the latter may be laid aside. The material part of the earlier statute is as follows:

"All actions of * * * debt grounded upon any * * * contract without specialty * * * shall be commenced and sued within the time and limitation hereafter expressed and not after; that is to say * * * the said actions for * * * debt * * * within six years next after the cause of such actions or suit and not after."

The present action is labeled assumpsit in obedience to the Pennsylvania procedure act of 1887 (P. L. 271) but, in substance, it is to be treated as the common-law action of debt. As already stated, the plaintiff became entitled to sue in August, 1891, but did not sue until June, 1906, nearly 15 years thereafter. The act of 1713 is a bar therefore if the suit is "grounded upon any * * * contract without specialty," and she admits that she cannot succeed unless the cause of action is grounded upon a "specialty." If she is suing upon a contract without specialty, the limitation applies. If the suit rests upon a specialty, the act does not cover the case, and (if no other statute applies) she may recover, since the period of 20 years required for the presumption of payment has not elapsed. What, then, is the precise nature of her cause of action? It is not the express contract of the defendant—for he never promised any one, either by writing or by word of mouth, that he would assume the double liability now in controversy. Nevertheless, a contract is implied, and is inseparably annexed to his ownership of stock in the Lombard Company. The statutes of Kansas wrote the contract into his ownership and he is conclusively presumed to have agreed to its terms. There are many decisions upon the subject, and brief quotations may be made from a few. In Woodworth v. Bowles, 61 Kan. 569, 60 Pac. 331, it was said that the relation between the creditor of a corporation and its stockholders is:

"A relation of contract; not a contract in the ordinary sense of an agreement between two parties who have reduced their acknowledgments to express terms, but a contract which the law implies from the stockholder's willingness to assume the liability of the statute, as evidenced by his stock subscription, and the creditor's willingness to accept the advantages and security allowed to him."

In Stocker v. Davidson, 74 Kan. 214, 86 Pac. 136, 118 Am. St. Rep. 315, a trustee in bankruptcy of the corporation sued a stock-

holder to enforce the double liability. This was under a statute of the state (passed in 1898, and afterwards repealed) which empowered receivers of insolvent corporations to collect the double liability, thus substituting the receiver in place of the corporation's creditors. In discussing the question whether a trustee in bankruptcy, as well as a receiver, might sue under the state act of 1898, the court said:

"The law attaches to the shareholder's stock subscription a contract to pay upon the debts of the corporation, in case of insolvency, a sum equal to the par value of his stock. By the enactment quoted the benefit of this contract is, in legal effect, assigned to the corporation for the use of all its creditors, if it becomes insolvent. While the liability is imposed by statute, it is brought into existence by, and is included in, the contract of the stockholder. The right to enforce it is a right of action arising upon contract. It is therefore fairly within the meaning of subdivision 6 of section 70a of the bankruptcy act (30 U. S. Stat. p. 565), and becomes vested in the trustee in bankruptcy of the corporation upon his appointment and qualification."

Section 70a6 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]) vests in the trustee inter alia "rights of action arising upon contracts."

In Walterscheid v. Bowdish, 77 Kan. 665, 96 Pac. 56, a judgment on a book account had been recovered against the A. Company in 1900. The B. Company having taken over the A. Company's property and agreed to pay its debts, the plaintiff in the judgment sued the B. Company thereon in 1901. Walterscheid & Bro. were the only stockholders in the B. Company, and in September, 1904, they were sued upon their double liability by Bowdish, who had been appointed receiver of that corporation. The act of 1898, already referred to as giving a receiver the power to sue, and an act of 1901 also relating to the double liability, had been repealed in 1903, and defense was therefore made upon the ground that " * * * no law existed imposing an obligation upon the plaintiffs in error"—meaning the act of 1901—"and no law existed providing any remedy for the enforcement of the obligation, if an obligation existed"—meaning the act of 1898. Dealing with this defense the court said:

"The controversy then depends upon whether the liability of the plaintiffs in error was an obligation imposed by the statute and expiring with the statute, or whether it was founded in contract and was beyond the power of the Legislature to affect. The question was answered in Stocker v. Davidson, 74 Kan. 214, 86 Pac. 136 [118 Am. St. Rep. 315], a portion of the syllabus of which reads:

" 'In this state the statutory liability of a stockholder to pay upon the debts of the corporation an amount in addition to his subscription equal to the par value of his stock becomes an asset of the corporation in the event of its insolvency. The liability is one arising upon contract. The right of action to enforce it is one arising upon contract.' "

Holding that a receiver had the same right to sue as a trustee in bankruptcy, and that the repeal of a statute has no effect on such rights and interests as have accrued under it, the court proceeded:

"We therefore hold, following the cases of Stocker v. Davidson and Watkins v. Glenn [55 Kan. 417, 40 Pac. 316], supra, that, although the act of 1903 purported to repeal both the obligation and the remedy, that act was not operative as to this case. Not only did the obligation arise out of contract, but the remedy had been invoked under the statute before the repealing act was passed, and without the remedy the contract itself would be so far im-

paired as to be valueless. Neither the obligation nor the remedy is therefore affected by the repealing statute."

Rowland v. Creamery Co., 79 Kan. 134, 99 Pac. 212, does not touch this question. It simply holds that the Legislature which imposed the double liability in favor of creditors might take it away, so far as debts thereafter contracted were concerned; the court saying:

"It may be that contracts made and obligations entered into by the Creamery Company while the double liability law was in force would carry with them as security the double liability of the stockholders even after the law creating such liability had been repealed, because of the familiar rule that the law in force at the place where a contract was made enters into and forms a part of the obligation. This rule, however, does not apply to laws which have been repealed at the time the contract is made, and therefore the double liability provided by this statute [Act of 1901] has no application to obligations incurred or contracts entered into after its repeal. It follows that the enactment or repeal of a statute cannot impair the obligation of a contract which is not in existence. The constitutional provision of our state above quoted, being section 2 of article 12, has no force of itself in creating or protecting creditors or stockholders. Whether or not stockholders are liable as stated in the constitutional provision depends upon the Legislature, and it can impose or withdraw such liability at pleasure."

(It may be noted in passing that the plaintiff's rights are fixed by the statutes in existence when her bonds were acquired, but, as the later statutes do not change the nature of the liability, the foregoing cases are relevant.)

Other Kansas decisions are referred to by the Supreme Court of the United States in Whitman v. Oxford National Bank, 176 U. S. 559, 20 Sup. Ct. 477, 44 L. Ed. 587, where the nature of this liability is discussed. The following paragraph will sufficiently indicate the court's conclusion:

"The liability which by the Constitution and statutes is thus declared to rest upon the stockholder, though statutory in its origin, is contractual in its nature. It would not be doubted that, if the stockholders in this corporation had formed a partnership, the obligations of each partner to the others and to creditors would be contractual, and determined by the general common law in respect to partnerships. If Kansas had provided for partnerships with limited liability, and these parties, complying with the provisions of the statute, had formed such a partnership, it would also be true that their obligations to one another and to creditors would be contractual, although only in the statute was to be found the authority for the creation of such obligations. And it is none the less so when these same stockholders organized a corporation under a law of Kansas, which prescribed the nature of the obligations which each thereby assumed to the others and to the creditors. While the statute of Kansas permitted the forming of the corporation under certain conditions, the action of these parties was purely voluntary. In other words, they entered into a contract authorized by statute."

The last sentence seems to summarize the discussion. No doubt the contract was authorized by statute, but it was a contract nevertheless, although its terms were prescribed by the lawmaking power. There is nothing compulsory about the transaction. The state in effect declares to intending buyers of shares in Kansas corporations:

"You are free to buy or not, as you choose. But, if you buy, you must take the shares as we offer them, with the risk of a double liability."

The purchase of such shares becomes a contract, and an agreement to bear the statutory liability is conclusively implied therefrom. The

source of the liability is the statute, but the stockholder assumes the burden by a voluntary contractual act. Many cases are collected on this subject in the note to Prince v. Lynch, 38 Cal. 528, 99 Am. Dec. 432.

But no one can avoid observing that a contract could not be implied if there had been no statute, and the stockholder's liability has therefore been also described in language like this:

"The liability of the stockholders being only created by statute, the period of the limitation of the right to enforce it was three years." Cottrell v. Manlove, 58 Kan. 408, 49 Pac. 520. "[The action] was upon the liability created by statute although contractual in its nature, as is illustrated by the fact that the three-year statute of limitations applies to it." Thomas v. Remington, 67 Kan. 603, 73 Pac. 910.

And the Supreme Court of the United States has used similar language:

"The liability which by the Constitution and statutes is thus declared to rest upon the stockholder, though statutory in its origin, is contractual in its nature." Whitman v. Bank of Oxford, supra.

"We think this liability was created by statute as it was by virtue of the statutes that the contractual liability arose." Platt v. Wilmot, 193 U. S. 613, 24 Sup. Ct. 546, 48 L. Ed. 809.

It may therefore be properly said, I think, that an action upon such a liability rests alike upon statute and upon contract, and may be regarded with sufficient correctness as referable to either. Indeed, the two elements in the transaction are inseparable: If there were no statute, there would be no liability; and it is equally true that no liability would exist if the stockholder had made no contract. It being impossible therefore to separate these elements, even in thought, it is not to be wondered at that sometimes one view and sometimes the other seems to be emphasized for the purposes of a particular decision. For example, in considering the Kansas statute, the Supreme Court of that state has decided that the limitation of three years applies to a suit to enforce the double liability, because it is "an action upon a liability created by a statute, other than a forfeiture or penalty," evidently laying stress in this instance on the statutory element, as in Stocker v. Davidson, supra, it laid stress on the element of contract. And the difficulty of dealing with this composite liability is well illustrated in Platt v. Wilmot, 193 U. S. 602, 24 Sup. Ct. 542, 48 L. Ed. 809, where Mr. Justice Peckham considered the question whether a suit in New York to enforce the Kansas liability was to be governed by section 382 of the New York Code of Civil Procedure applying a six-year limitation to:

"An action upon a contract obligation or liability, express or implied; except a judgment or sealed instrument.

"An action to recover upon a liability created by statute; except a penalty for forfeiture."

Or was to be governed by section 394:

"This chapter does not affect an action against a director or stockholder of a moneyed corporation or banking association to recover a penalty or forfeiture imposed, or to enforce a liability under the common law or by statute; but such an action must be brought within three years after the cause of action has accrued."

·Upon this question the opinion says (page 612 of 193 U. S. page 545 of 24 Sup. Ct. [48 L. Ed. 809]):

"The third objection is that the liability of the stockholder in this case is not created by the common law or by statute, but is contractual in its nature, and is therefore governed by section 382 (the material portion of which has already been set forth), instead of section 394 of the Code.

"The case of Whitman v. Oxford National Bank, 176 U. S. 559, 20 Sup. Ct. 477, 44 L. Ed. 587, is cited to show that the double liability of the stockholder under the Kansas Constitution and statutes is of a contractual nature, and·therefore not within section 394, because it is not a liability created by common law or by statute. In the Whitman Case it was held that this liability, though statutory in origin, was contractual in its nature; or, in other words, the stockholder when he subscribed for or purchased his stock entered into a contract authorized by statute. In that case it was also held that the Legislature of Kansas had also acted on the subject-matter, and that the Constitution and the statutes were to be taken together as making one body of law, and that, therefore, it would serve no good purpose to inquire what rights or remedies a creditor of a corporation might have, or what liabilities would rest upon a stockholder if either Constitution or statutes stood alone and unaided by the other.

"We think, within the meaning of section 394, this liability was created by statute, as it was by virtue of the statutes that the contractual liability arose. The language of the section plainly includes this case. It is a liability created by the statute, because the statute is the foundation for the implied contract arising from the purchase of or subscription for the stock; the contract being that the holder of the stock shall be liable in accordance with the terms of the statute.

"Also, while the liability is contractual in its nature, it arises out of the Constitution or the statute, or from a combination of both; by virtue of the application of general principles of law to the facts in the case. Neither the Constitution nor the statute says that the liability is contractual, but, as the Constitution and statute existed, the liability arising therefrom, as against the stockholder, is because of the principle of law which works out a contractual liability upon these facts, and it may be fitly described as the common law."

In a word, we are in a region of metaphysical refinement and sub-·tlety from which there is no escape, and where plausible objections may be stated to any possible view. It is unnecessary to refer to other decisions that lay more stress upon the part played by the statute than upon the part played by the stockholder's contract. In the last resort and at the end of the analysis both constituent elements of the transaction must always be found.

If I am correct in this conclusion, the next inquiry is: Can a liability thus compounded be properly described as founded upon a "specialty"? If a liability be wholly imposed by a statute, it has come to be described as arising out of a specialty. Such was the case in Phila. v. Atlantic, etc., Co. (C. C.) 109 Fed. 55. But where a statute is only a factor in the liability, and a factor no more essential than is the defendant's contract, I think it may well be'doubted whether such a liability is properly described as arising by specialty. A statute does not belong to the class of specialties strictly so called, for a specialty is a contract under seal; but the original meaning of the word has been expanded so that it is sometimes used to include debts founded upon a record or upon a statute. 26 Am. & Eng. Ency. (2d Ed.) 3, and notes; 36 Cyc. 524, and notes; 2 Thomp. Corp. (Ed. of 1895) § 1988 et seq. Assuming it to have been used by the act of 1713 in its widest sense, I think we may safely say that it could not have been

intended to embrace such an obligation as is now in question. A stockholder's double liability is a modern device, and could not have been in the Legislature's mind in 1713. But contracts were in mind, contracts of both classes, those with specialty and those without specialty; and for contracts without specialty a limitation was fixed, while contracts with specialty were left untouched. As it seems to me, an obligation that rests as much upon the defendant's agreement as upon a statute cannot properly be said to be founded upon a specialty in the sense employed by the act, and, unless it is so founded, it is without specialty, and an action thereon is limited by the act.

The question now involved has not been decided in any Pennsylvania case. In two or three other states—Georgia, Kentucky, and perhaps Rhode Island—similar obligations have been held to be upon specialties, while in New York and Massachusetts the decisions are the other way. In the federal courts there are a few decisions not altogether harmonious (Ramsden v. Knowles, 151 Fed. 721, 81 C. C. A. 105, 10 L. R. A. [N. S.] 897, is perhaps the latest), but unless Carrol v. Green, 92 U. S. 509, 23 L. Ed. 738, has been overruled, the point has been authoritatively decided in that case against the plaintiff. There it appeared that the charter of a South Carolina bank imposed a double liability on its stockholders upon the failure of the bank. In a suit brought by creditors the stockholders set up the statute of limitations which required an action of debt "grounded upon any contract without specialty" to be brought within four years. The Supreme Court held that, as the liability of the stockholders arose from their acceptance of the act creating the corporation and their implied promise to fulfill its requirements, the proper remedy was an action upon the case; but that, if debt were the proper form of action, the result would be the same, and that the statute of limitations would be a bar to an action in either form, because the contract was "without specialty." This ruling was repeated in Godfrey v. Terry, 97 U. S. 171, 24 L. Ed. 944, and Terry v. McLure, 103 U. S. 442, 26 L. Ed. 403, and was directly approved in Metropolitan Railroad v. District of Columbia, 132 U. S. 13, 10 Sup. Ct. 19, 33 L. Ed. 231. It is true that these cases were distinguished in McClaine v. Rankin, 197 U. S. 154, 25 Sup. Ct. 410, 49 L. Ed. 702, which was an action brought to enforce the double liability under the national banking act, but they were not disapproved, and the distinction was put upon the ground that the right to sue a stockholder in a national bank does not arise at all until the Comptroller of the Currency has made an assessment, and that such assessment is therefore the basis of the suit. It was declared that "the statute of limitations did not commence to run until assessment made, and then it ran as against an action to enforce the statutory liability, and not an action for breach of contract." It was also said that in Carrol v. Green and Metropolitan Railroad v. District of Columbia the right to recover was direct and immediate, and not secondary and contingent, as in the Rankin Case then before the court; but three justices dissented from even that distinction, and regarded Carrol v. Green as controlling. I can find nothing to justify the position that these cases have been overruled, and, if they are still of authority, they are decisive.

I am therefore of opinion that the act of 1713 bars the present action, and, if this conclusion is sound, it is unnecessary to consider the effect of the act of 1867. And it is unnecessary, also, to consider the effect of certain Kansas decisions, which do not directly deal with the statute of limitations of that state, but rather with the duration of the right of action that is given to the creditor. For example, in Elevator Co. v. Whitbeck, 63 Kan. 103, 64 Pac. 984, it was held that the double liability of the stockholder was so much a matter of contract that it resembled closely the liability of a surety for his principal; and it was therefore decided that, unless the creditor had an enforceable debt against the corporation at the time when he sued the stockholder, he could not recover against the latter. In that case three years had run from the suspension of business without suit by the creditor against the corporation, and the Kansas limitation had run in the corporation's favor. But four years had not elapsed, and, as the Kansas statute did not permit the creditor to sue the stockholder until after one year from the suspension of business, the statute of limitation had not run in favor of the stockholder. Nevertheless it was held that the creditor could not recover against the stockholder because he no longer had an enforceable claim against the corporation as principal. Certainly in the face of this ruling the plaintiff could not recover in a Kansas court against the defendant—not because the defendant would be protected by the statute of limitation, but on the distinct ground that, as the corporation could no longer be sued, the plaintiff's right to sue the stockholders had also disappeared. The question would then arise for decision here: Does the right of action given to creditors by the state of Kansas have an independent life of its own, which persists in other jurisdictions, although it has been wholly extinguished in the parent state? Or does its life anywhere last only as long as it would have lasted in its native atmosphere? No Kansas court would have entertained a suit against a stockholder after 1894; the reason being, as already stated, that the plaintiff had lost the right to sue, and not that the stockholder was himself protected by limitation, while, if the plaintiff's position be sound, the same right that has wholly disappeared in Kansas maintains a sufficiently vigorous existence in Pennsylvania to support a suit for seventeen years longer.

The clerk is directed to enter judgment in favor of the defendant.